## Stewart *against* The Commonwealth.

On an indictment charging the defendant with erecting a wooden building within the city of Pittsburgh, contrary to the ordinance, the jury found that he had erected a building composed partly of brick and partly of wood: *Held*, that such building was not within the ordinance.

THIS was a writ of error to the mayor's court of the city of Pittsburgh, to remove the record of an indictment against William Stewart, for erecting a wooden building within the limits of the city.

The indictment in the first count charged, that the defendant, William Stewart, at the city aforesaid, and within the jurisdiction of this court, with force and arms, did make, build and erect, a certain wooden building, mansion-house, coach maker's shop, wagon maker's shop, carpenter shop, blacksmith's shop, workshop, carriage-house, warehouse, house, store, and stable, on, and fronting on Third street, between Wood street and Smithfield street, and within that part of said city, contained, bounded, and included by and within the bounds and limits following; that is to say, beginning on the Monongahela river at the end of Grant street, and thence running along said Grant street to Liberty street, thence across Liberty street to Washington street, thence along Washington street to the Allegheny river, thence along the Allegheny river to its confluence with the Monongahela river, thence along the Monongahela river to the place of beginning; to the great damage and common nuisance of all the good citizens of this commonwealth inhabiting said city, contrary to the form of the ordinance of the citizens of said city, ordained and created in select and common councils assembled, against the form of the act in such case made and provided, and against the peace and dignity of the commonwealth of Pennsylvania.

The second count charged, that the said William Stewart, on the day and year aforesaid, at the city aforesaid, and within the jurisdiction of this court, with force and arms, did cause to be made, built and erected, a certain wooden building, mansion-house, coach maker's shop, wagon maker's shop, carpenter's shop, blacksmith's

shop, workshop, carriage-house, ware-house, house, store, and stable, on and fronting on Third street, between Wood street and Smithfield street, in said city, and within that part of the said city, contained, bounded and included by and within the bounds and limits following; that is to say, beginning on the Monongahela river at the end of Grant street, and thence running along said Grant street to Liberty street, thence across Liberty street to Wash-. ington street, thence along Washington street to the Allegheny river, to its confluence with the Monongahela river, thence along the Monongahela river to the place of beginning; to the great damage and common nuisance of the good citizens of this commonwealth inhabiting said city, contrary to the form of the ordinance of the citizens of said city, ordained and created in select and common councils assembled, against the form of the act of assembly in such cases made and provided, and against the peace and dignity of the commonwealth of Pennsylvania.

. The jury on the trial found the following special verdict, and the court below entered judgment for the commonwealth.

" The jury doth agree by the evidence given, and a visit to the premises by them, that William Stewart, of the city of Pittsburgh, the defendant named in this indictment, did, between the 1st day of February and the 1st day April 1837, cause to be erected or built within the limits mentioned in the indictment, a coach maker's shop, carriage-house, blacksmith shop, and stable, fronting on Third street, between Wood and Smithfield streets, in the city of Pittsburgh, sixty feet, and extending back eighty-five feet, (in the following manner:) first, by erecting two frames on each side, fifteen feet front, extending back eighty-five feet, on wooden sills; then throwing a roof over the whole, including the thirty feet area in the centre. And, after the frames and roofs stood from three to four weeks, the front and part of both sides were filled in, between the studding, with brick, leaving above fifty-nine feet on one side, and twenty-three feet on the other side blank, excepting the studding, which is closed in by the brick-house of Mrs Oliver, on the one side, and the masonic hall on the other; the rear of the building being left open, except that part which is closed by a brick wall of William Graham, about ten feet high, running about two-thirds of the way across, and the balance by a frame-house of the said Graham.

" And the jurors aforesaid, upon their oaths aforesaid, respectively do say, that not being able to agree as to whether the evidence is sufficient in law, to convict or acquit the defendant of the charge in the indictment, they find, that if, in the opinion of the court, the erection of such a building as described, amounts to the offence charged in the indictment, then, and in such case, they say, the defendant is guilty in manner and form as he stands indicted; but if not so sufficient, then the defendant is not guilty in manner and

form as indicted, and that the county pay the costs of prosecution, and so they say all."

The plaintiff in error assigned for error:

1. That the indictment is fatally defective, in as much as it does not set forth sufficient matter of substance to give jurisdiction to the court.

2. The indictment is defective in this, that there is nothing in it by which the court is judicially informed of the existence of the city of Pittsburgh, or of the authority of its councils to pass the ordinance on which the prosecution is grounded, or of the action of the councils in reference to it.

3. The special verdict does not set forth an offence within the meaning of the act of assembly, or the ordinance founded on it.

*Shaler*, for plaintiff in error, objected first to the indictment, that it was defective, in not setting out the ordinance of the city of Pittsburgh. The act of assembly of April 10, 1826, authorized the ordinance within such parts as the corporation, by their by-laws, should prescribe and limit. The ordinance so limiting and prescribing, should be stated in the indictment. Acts erecting cities, boroughs, creating turnpike and other companies, are private acts; 6 *Bac. Ab.* 374; 1 *Chit. Com. Law* 277; 1 *Saund.* 193; 4 *Co.* 76; 1 *Str.* 538; *Cowp.* 26. Where a power to the mayor, aldermen, and citizens, to purchase lands and make a road, is recited in the pleadings; King *v.* Horn, *Cowp.* 685; 1 *Bos. & Pul.* 58; 7 *Cowan* 608, in debt for a penalty under a by-law, the *narr.* must set forth the authority to make it.

2. The special verdict does not set forth any offence within the ordinance. It is not, according to common understanding, a wooden building, which alone is prohibited by the ordinance. It is true, it is chiefly of wood; but a portion of the building is of brick. Penal statutes are to be construed strictly. 4 *Conn. Rep.* 60. An act of assembly was passed specially to meet such a case as this in Philadelphia. Many of the buildings in Pittsburgh are erected in the way this is, at one-half the expense of brick buildings: and beyond the city, wooden buildings are common.

*Findlay*, for defendant in error, insisted, 1. That it was clearly a public act of assembly. It creates an offence against the commonwealth, punishable by indictment. How can such an act be a private act? The subject matter is public. Municipal corporations are public corporations, and their ordinances will be taken notice of, though not particularly set out in the pleadings.

2. He contended, it was in effect a wooden building, the intermixture of brick being a mere evasion of the law, to save expense, whilst the city was left exposed to all the dangers from fires, which the law was intended to prevent. The court ought to give the ordi-

nance a fair construction, so as to carry out the known object for which it was enacted.

The opinion of the court was delivered by

SERGEANT, J.—The facts found by the special verdict, show that the building in this instance was what is commonly called brick-pane, composed partly of wood and partly of brick. If this were a remedial law, it might be construed liberally, so as to effectuate the design of the legislature, which was to guard against the danger of fires in a populous city. But being a penal statute, and this proceeding of a criminal cast, the rule of law is well settled, that such statutes are to be construed strictly, and that no one is to be brought within the penalty of the act, who is not within the plain meaning of the words, strictly construed: and they are confined to wooden buildings only. This interpretation seems to be the more necessary in the present case, because, to reach cases of this kind in Philadelphia, where buildings were composed partly of brick, and partly of wood, or other combustible materials, a special act of the legislature was deemed requisite, notwithstanding there was an ordinance in existence similar to that on which the present indictment is framed. We think, therefore, the facts found by this special verdict do not bring the case within the ordinance, and that to reach such cases it will be necessary for the corporation of Pittsburgh to procure from the legislature another act of assembly, and to frame another ordinance suited to the case.

Judgment reversed.