# T. D. HARTGRAVES v. STATE.

No. A-437.　Opinion Filed March 21, 1911.

(114 Pac. 343.)

1.　**GRAND JURY—Irregularity of Proceedings—Presence of Unauthorized Persons.**　(a) Where counsel privately employed to prosecute a case appear before a grand jury and assume to represent the state upon the investigation of a case then pending before said grand jury, an indictment found by said grand jury as the result of such investigation should, upon motion of the defendant, be set aside.

(b) If the county attorney is disqualified from representing the state in the prosecution of a party charged with crime, said county attorney is without authority to appoint a special attorney to represent him before the grand jury in the investigation of said cause, and an indictment found as the result of such investigation, upon motion of the defendant, should be set aside.

(c) No person has a right to be in a grand jury room during any of their proceedings while investigating a criminal charge except the witness then being examined and the attorney authorized by law to represent the state in such examinations; and, if any other person is in the grand jury room during any part of their investigations, an indictment found by them as the result of such investigation should, upon motion of the defendant, be set aside.

2.　**RECEIVING STOLEN GOODS—Indictment—Description of Person.**　An indictment for receiving stolen goods should allege the name of the person from whom such goods were so received; and, if the name of such person is unknown, that fact should be alleged.

3.　**TRIAL—Instructions—Former Acquittal.**　Where the plea of a former acquittal is interposed, but no evidence is introduced to support it, it is not improper for the court to decline to instruct the jury on that issue.

(Syllabus by the Court.)

*Appeal from District Court, Custer County; W. N. Maben, Judge.*

T. D. Hartgraves was convicted of receiving stolen goods, and his punishment assessed at one year's imprisonment, and he appeals. Reversed and remanded, with directions.

*R. J. Shive,* for appellant.

*Smith C. Matson,* Asst. Atty. Gen., for the State.

FURMAN Presiding Judge. First. Defendant filed a motion in the lower court to set aside the indictment in this case upon the ground that F. A. Snodgrass was the duly elected and qualified county attorney of Custer county, and was in attendance upon the court and the grand jury when his presence was required during the term of the court at which this indictment was found, and there was no physical or mental disqualification which incapacitated said Snodgrass from performing his duty as such county attorney at said time, but that R. P. Phillips, a member of the bar, who was not the county attorney or deputy county attorney of Custer county, Okla., and was not the Attorney General or Deputy Attorney General of the state of Oklahoma, and was not authorized or empowered by law to appear before said grand jury when they were considering this accusation against defendant, but was privately employed by the prosecuting witness in this cause to prosecute this defendant without warrant or authority of law was present and presented this case to the grand jury and conducted the examination of the witnesses before the grand jury when the grand jury was considering as to whether or not they should find an indictment against the defendant in this cause, and said R. P. Phillips insisted that said grand jury should indict this defendant. This motion was duly sworn to by the defendant. The court heard part of the evidence in support of this motion, to the effect that said F. A. Snodgrass was the county attorney of Custer county, and was disqualified from prosecuting the defendant because prior to the election of said Snodgrass to the office of county attorney of Custer county, Okla., he had represented the defendant in some cases connected with the transaction in which the defendant is now indicted. It also appeared that said F. A. Snodgrass had verbally requested said R. P. Phillips to represent the state before the grand jury upon the investigation of this case, but the said R. P. Phillips was not appointed as deputy county attorney, and did not have a commission from the district judge of Custer county to act as county attorney in this case. The district court thereupon declined to

hear further testimony, and overruled the defendant's motion to set aside the indictment. As there was no denial of the other allegations contained in appellant's motion, they must be taken as confessed, and the only question before us is, Are the facts proven and the allegations in the motion which were not controverted sufficient to set aside the indictment?

Section 6683, Snyder's Comp. Laws Okla. 1909, is as follows:

"The grand jury may at all reasonable times ask the advice of the court or of the district attorney. The district attorney may at all times appear before the grand jury for the purpose of giving information or advice relative to any matter cognizable before them and may interrogate witnesses before them whenever he thinks it necessary, but no other person is permitted to be present during their sessions except the members and a witness actually under examination and no person whomsoever must be permitted to be present during the expression of their opinions or the giving of their votes upon any matter before them."

This statute must be construed in connection with the other provisions of law with reference to county attorneys and their deputies and the Attorney General and his deputies. We think the plain meaning and import of this statute is that no one should be permitted to be present during the sessions of the grand jury except the witnesses and the officers duly authorized by law to so appear. Section 6738, Snyder's Comp. Laws Okla. 1909, provides that the indictment must be set aside on motion of a defendant for certain specified reasons. But the special grounds for setting aside an indictment contained in this section are not exclusive of other grounds, for it is expressly provided that an indictment must be set aside whenever it appears that it was not found, indorsed, presented, or filed as provided by the statutes of the state. It is true that a substantial compliance with the provisions of the statutes relating to grand juries and the manner in which indictments are to be found and presented is all that the law requires, but, whenever there has been a departure from the provisions of the statutes which would deprive a defendant of a substantial right

or would be dangerous to justice, then an indictment so found must be set aside. Prior to statehood, no person could be prosecuted for a felony unless by·indictment found by a grand jury. But the grand juries had indicted so many persons where convictions could not be obtained that the people had in a great measure lost confidence in this institution. In fact, grand juries were by many regarded largely as repositories of malice, cowardice, and perjury, not on account of the men who composed the gra·d juries, but on account of their secret inquisitorial powers, which enabled cowardly, corrupt, and malicious men to go before a grand jury and prefer charges which they would not dare to make publicly. It gave such characters an opportunity from ambush to shoot their enemies in the back. Although a man so indicted would be acquitted, yet it would place an indelible stain upon his good name, however innocent he might be. So the Constitutional Convention endeavored, as far as possible, to substitute in its place proceedings by information in felony cases, where the defendant would have a preliminary trial before an examining magistrate, unless he saw fit to waive such preliminary trial. The purpose of this was to give a defendant, where he demanded it, as far as possible, an opportunity to face his accusers and present his defense in open court before he would even be placed upon final trial. Had it not been for the fact that cases sometimes arise in which it would be difficult if not impossible to institute criminal proceedings without a grand jury, the system doubtless would have been abolished entirely. Therefore section 18 was incorporated in our Bill of Rights, which is as follows:

"A grand jury shall be composed of twelve men, any nine of whom concurring may find an indictment or true bill. A grand jury shall be convened upon order of a judge of a court having the power to try and determine felonies, upon his own motion or such grand jury shall be ordered by such judge upon the filing of a petition therefor signed by one hundred resident taxpayers of the county; when so assembled such grand jury shall have power to investigate and return indictments for all character and grades of crime; and such other powers as the Legislature may prescribe:

Provided, that the Legislature may make the calling of a grand jury compulsory."

From this it is seen that no grand jury can be convened unless upon order of the judge of the district court, either upon his own motion or upon a petition therefor signed by at least 100 resident taxpayers of the county. While it is true that, when a grand jury has been so convened, it has power to find and return indictments for all character and grades of crime, yet it was intended that grand juries should only be convened in cases 'of emergency. We cannot ignore these provisions of our Constitution when we go to determine the policy of the state with reference to prosecutions by indictment. Section 19 of article 7 of our Constitution, among other things, provides:

"All prosecution shall be carried on in the name and by the authority of the state of Oklahoma."

We have heretofore had occasion to pass upon this clause of the Constitution in cases where this language was omitted from the indictments, and we have held that this constitutional provision does not relate to a matter of pleading, but that it secures to each inhabitant of this state a substantial right. In the case of *Caples v. State*, 3 Okla. Cr. 80, 104 Pac. 497, 26 L. R. A. (N. S.) 1033, this court said:

"It is true that the Constitution requires that 'all prosecutions shall be carried on in the name and by the authority of the state of Oklahoma,' but it is nowhere required that this allegation shall appear in the information or indictment. This question was before this court in the case of *Arie v. State*, 1 Okla. Cr. 666, 100 Pac. 33, and we there held that, if it appears from the record that the prosecution was actually conducted in the name and by the authority of the state, the object and purpose of the Constitution is accomplished, even though no such allegation appeared in the information or indictment. Suppose that this allegation was in the information, and the record discloses the fact that the prosecution was conducted by private parties without authority from the state, would the allegation of the information give the court jurisdiction? We do not profess to be infallible, but to our minds it is clear that the purpose of this provision in the Constitution is to protect the people of this

state from private prosecutions which might degenerate into persecutions, and from prosecutions for any other foreign power save that of the state."

The case before us is directly in point. Here the record shows that, while the prosecution was nominally being conducted in the name of the state, as a matter of fact it was in the hands of a private attorney employed by the prosecuting witness. We think that such conduct is a direct violation of the Constitution of this state. If a county attorney can turn a defendant over to the paid counsel of private parties, or if private parties can usurp the powers of a county attorney before a grand jury where the defendant cannot be heard and has no one to represent him, no man is safe from persecution in Oklahoma, and the abuses of the grand jury system will be perpetuated among us. This is the evil that the people have tried to destroy. The law therefore prohibits all persons from being in the grand jury room except the officers authorized by law to examine witnesses and the witness to be examined, and the presence of any other person in the grand jury room at any stage of the proceedings when a witness is being examined, or when the grand jury are considering the advisability of finding an indictment vitiates the entire proceedings. There is no exception to this rule. The sessions of the grand jury being secret, it is impossible for a defendant to protect himself against danger from this source. Therefore the law protects him by rigidly excluding from the grand jury room all persons except those expressly authorized by law to be present. Fairness and justice are the essential elements of every step taken in the prosecution of criminal causes in Oklahoma. We heartily indorse the statement contained in the case of *United States v. Edgerton* (D. C.) 80 Fed. 375, which is as follows:

"It is beyond question that no persons other than a witness undergoing examination and the attorney for the government can be present during the sessions of the grand jury. The rule is inherent in the grand jury system with all the force of a statutory enactment. The cases where bailiffs and stenographers have on occasions been temporarily present in the grand jury rooms are only apparent exceptions. The rule in its spirit and purpose ad-

mits of no exception. In the present case it is suggested that the only testimony heard while the expert Flynn was present related to the production of certain books on account, touching which the expert interrogated the witness who was testifying as to his possession of such books or other documents, and that this could not have prejudiced the defendant. The court cannot know that this suggestion represents the facts. The case as presented is one where an expert was not only present in the grand jury room while a witness was testifying, but took part in the investigation by interrogating the witness. The court cannot inquire as to the effect of this conduct. There must not only be no improper influence or suggestion in the grand jury room, but, as suggested in *Lewis v. Commissioners,* 74 N. C. 194, there must be no opportunity therefor. If the presence of an unauthorized person in the grand jury room may be excused, who will set bounds to the abuse to follow such a breach of the safeguards which surround the grand jury? It is common knowledge that expert witnesses are more likely to testify from interest than any other class. They usually testify to support or overthrow a theory, and frequently, if not usually, after an *ex parte* investigation, which strongly predisposed them in favor of the party or cause in whose services they are enlisted. In the case of *U. S. v. Kilpatrick* [D. C.] 16 Fed. 765, the court quashed an indictment upon motion upon a case much like the present as to this point."

We know that numerous and respectable authorities can be found holding to the contrary, but an investigation will show that in those cases the constitutional and statutory provisions upon which they are based with reference to grand juries are very different from ours. But, even if they were not, we would not hesitate to say that it is unfair, unjust, and illegal to allow any person to be in a grand jury room when witnesses are being examined, unless such person was before said grand jury as a witness or was there as a regular officer of the law in the discharge of his duties as such. In the case at bar the attorney who appeared before the grand jury was not the deputy county attorney and he had no appointment from the district judge to act in place of the county attorney on account of the disqualification of that officer. He was merely requested by the county attorney to go before the grand jury. While we are satisfied that neither the

county attorney nor the attorney who appeared for him before the grand jury were actuated by improper motives in this case, yet this cannot cause us to sanction a proceeding which is unauthorized by law, is contrary to public policy, and which, if allowed to stand, would establish a precedent repugnant to reason and pregnant with danger to justice and innocence. A county attorney has no right to turn a defendant over to his enemies, after having first armed them with the entire power of the state to be used as they see fit in his prosecution. If such prosecutions were permitted, they would soon become a great scandal and absolutely odious to a fair-minded and justice-loving people. Honest men against whom naught could be truthfully alleged have been greatly mortified and have had their good names called in question by just such proceedings as this, prompted alone by the malice and cowardice of their enemies, when if they had been faced by their accusers, and given the right of cross-examination, those who sought to destroy them through the secret inquisitorial proceedings of a grand jury would have been covered with defeat and infamy. In 1876, when the writer of this opinion was practicing law in Texas, a preacher who had some bitter enemies was indicted for stealing hogs. Upon the final trial it was conclusively shown that the parties who had caused his indictment were themselves the thieves. While the preacher was acquitted, yet he carried to his grave the stain upon his name of having been indicted for hog stealing. We are pleased to be able to say that these remarks do not apply to the county attorney of Custer county or to the attorney who appeared for the private prosecution before the grand jury in this case. We call attention to these matters to illustrate the consequences which might grow out of this precedent if we allowed it to stand. The extreme illustration is always the test of a rule. Fairness and justice demand that a criminal prosecution should at all times be under the direction of a regularly constituted public officer, who is charged by law with the performance of this duty.

We desire to say in addition that the county attorney, being

5 Cr—18

disqualified in this case, was without power or authority to appoint any one to represent him. The appointment in such cases should come alone from the district judge, and should be of some member of the bar free from personal or private interest in the matter, who could be depended upon to act with fairness and impartiality as between the state and all of its citizens whose cases might come before the grand jury. Section 1598, Snyder's Comp. Laws of Okla. 1909, provides the only manner of appointing a special county attorney when the regular county attorney or his duly appointed deputy is unable to act, which is as follows:

"Each of the district courts, whenever there shall be no county attorney for the county, or when the county attorney shall be absent from the court, or unable to attend to his duties, may, if the court may deem it necessary, appoint by an order to be entered in the minutes of the court some suitable person to perform for the time being the duties required by law to be performed by the county attorney, and the person so appointed shall thereupon be vested with all the powers of such county attorney for that purpose."

We believe that it is the plain meaning of the laws and Constitution of Oklahoma that regularly elected or appointed officers shall conduct all criminal prosecutions. It is true that it is entirely proper and legitimate for counsel to be employed to assist the county attorney in open court in the prosecution of a criminal case, but even then the county attorney should never lose control of the case, and such assistant counsel should discharge only such duties in the prosecution of the cause as are assigned him by the county attorney. But it is highly improper for counsel employed to prosecute a case to be permitted to go into the grand jury room where the defendant cannot be heard and has no one to represent him. This duty should be performed alone by the proper officer of the law. The case of *Fooshee v. State*, 3 Okla. Cr. 677, 108 Pac. 554, does not conflict with the views here expressed. In that case the attorney who appeared before the grand jury was the regularly appointed deputy county attorney of Carter county, and his appointment was a matter of record in the county attorney's office of that county. We therefore hold that the trial court

erred in not sustaining the motion made by the defendant to set aside the indictment.

Second. The indictment in this case is defective in not alleging the name of the person from whom the stolen property was received, or that the name of such person was unknown to the grand jury. See *Fletcher v. State,* 2 Okla. Cr. 300, 101 Pac. 599, 23 L. R. A. (N. S.) 581. It is not necessary, however, for such an indictment to allege from whom or by whom such property was stolen.

Third. Upon the trial of this cause the appellant entered a plea of former acquittal, but did not offer in evidence any testimony reasonably tending to sustain said plea. Upon this issue the court charged the jury as follows:

"Gentlemen of the jury, you are further instructed that the defendant has introduced no evidence in support of his plea that he has already been acquitted of the offense charged in this indictment by the judgment of this court rendered at Arapaho on the first day of July, 1908. You are therefore instructed that in your deliberations in this case you will not consider this defense in arriving at your verdict in this case."

Where there is evidence in the record reasonably tending to support an issue, the weight and effect of such evidence is exclusively for the jury, and it would be improper for the court to withdraw it from their consideration, but, where there is no evidence tending to support an issue presented, the court should not submit such issue to the jury. We therefore find that the court did not err in its instructions upon the subject of former acquittal.

For the errors hereinbefore pointed out, this cause is reversed and remanded, with directions to the lower court to sustain the motion to set aside the indictment.

ARMSTRONG and DOYLE, JUDGES, concur.