# CHARLESTON.

## BAER v. GORE.

### Submitted October 6, 1916.    Decided October 24, 1916.

1. ELECTIONS—*Primary Elections—Statutory Provisions.*

    A statute which provides that a voter on entering the polling place ''shall announce his name'', ''shall sign his name and place of residence in a book of the party whose ballot he wishes to cast'', and subscribe an oath verifying his party affiliation, etc., before receiving and voting the ballot of the party so named, is mandatory, and prerequisite to the exercise of the elective franchise in a nominating primary. (p. 52).

2. SAME—*Qualifications of Voters—Constitutional Provision.*

    A statute requiring each voter in a primary election to state on oath his party affiliation before he is entitled to cast his ballot does not violate the constitutional provision that no ''political test oath shall be required as a prerequisite or qualification to vote'', or that with certain negative exceptions all male citizens twenty one years of age or over ''shall be entitled to vote at all elections held within the counties in which they respectively reside.'' (p. 59).

3. SAME—*Primary Elections—Statutory Provision.*

    Such statutory requirement is only a mode of ascertaining the party affiliation of the voter, and thereby to identify him as one entitled to cast the ballot of such party, and is not intended as a test of his right to vote in a primary as distinguished from a general election. (p. 59).

4. SAME—*Primary Elections—Legislative Control.*

    Primary elections are so far matters of public concern that, within legislative discretion, when not restrained by any constitutional inhibition, they are proper subjects of reasonable statutory regulation under the police power of the state. Such regulations are vital to the accomplishment of the purpose and scheme of nominating elections. (p. 57).

5. SAME.

    Statutes providing for such elections are based on a recognition of political parties as governmental agencies, and are usually intended to maintain party organizations and to secure the intergrity of party nominations. (p. 57).

6. APPEAL AND ERROR—*Jurisdiction—Constitutional Questions.*

    The appellate jurisdiction of this court is not determined by

the value of the subject matter of the controversy, in cases ''involving the constitutionality of a law''.   (p. 53).

7.  COURTS—*Appellate Jurisdiction.*

Where a just determination of a controversy between opposing candidates, arising out of a canvass of primary election returns, appealed to the circuit court under §26a22, ch. 3, Barnes' Code, virtually depends on the proper interpretation of a law charged to be invalid as in violation of the constitution, this court has juris-. diction to review the proceedings on writ of error.  (p. 55).

Error to Circuit Court, Logan County.

Controversy between Ira P. Baer and William Gore as to nomination at primary election for justice of the peace. Judgment for Baer, and Gore brings error.

*Affirmed.*

*John Chafin* and *Jas. E. Greever,* for plaintiff in error.

*E. L. Hogsett,* for defendant in error.

LYNCH, JUDGE:

Between Ira P. Baer and William Gore has arisen a controversy as to which of them received a plurality of votes cast in the June primary election for nomination as a candidate for justice of the peace of Logan district, Logan county, to be voted for in the general election to be held November 7, 1916.  The returns of the election, as ascertained by the commissioners and clerks conducting it, and by the county court as a board of canvassers, showed a plurality in favor of Gore, while upon appeal the circuit court found Baer nominated as a candidate, and not Gore, who assigns error.

These findings resulted from variant interpretations of the section of the primary election law that requires each voter to state upon oath his party affiliations, his age and residence, etc., as a prerequisite to the right to exercise the elective franchise at the polling place where he offers himself as a voter in a primary.  §26a (13), ch. 3, Barnes' Code.  The section is: ''On entering the election room, the voter shall announce his name, and if he is duly registered, or has obtained transfer as provided by law, he shall sign his name and place of residence in a book of the party whose ballot

he wishes to cast, which book shall be paged alphabetically, and have at the top of the page thereof in form and effect the following oath or affirmation with blank spaces properly filled in as to the party and precinct as indicated: 'The undersigned do each for himself severally swear or affirm that I am a regular and qualified member and voter of the...............party, and am a duly qualified resident and voter in precinct No............., ..............district, ..............county, West Virginia, and reside at the place designated opposite my name signed hereunder; that the one ballot which I am about to cast will be the only primary election ballot cast this day by me; that I have neither received, nor do I expect to receive, anything of value for myself or another, given or promised with the manifest intent to influence my vote or the vote of another or others at this time'. Having so signed, said voter shall be allowed to cast the ballot of the party named in said oath or affirmation''. The legal validity of this statute is in issue.

The election commissioners and the board of canvassers apparently interpreted the provision quoted as directory only, while the circuit court treated it as mandatory. This diversity constitutes the real cause of the controversy, although other questions arise as incidental to the main issues to be adjudged on the writ of review. The provisions of the enactment are expressed in imperative terms. They are positive and unequivocal. Generally ''shall'', when used in constitutions and statutes, leaves no way open for the substitution of discretion. 35 Cyc. 1451; *Madderom* v. *Chicago,* 194 Ill. 573; *Coleman* v. *Eutaw,* 157 Ala. 340; *Sate* v. *Talty,* 166 Mo. 559. All authorities coincide in holding mandatory all statutory requirements, although contained in an election law, if it appears reasonably certain the legislature intended them to have that effect. *Morris* v. *Board of Canvassers,* 49 W. Va. 262. This court in *Daniel* v. *Simms,* 49 W. Va. 554, interpreted as imperative a provision requiring each voter to place the names of all persons for whom he desired to vote in one column of the ballot and to designate the office to be filled by each of them. Hence, it seems obvious that the legislature intended that each elector who offers to vote in a primary should declare his party affiliation as a condition of

the right to express his preferences between the candidates of his own party for any political office.

One of the many reasons assigned and argued by counsel to show that a writ of error does not lie from this court to the circuit court, in proceedings of this nature, is that the value of a nomination for an office is less than one hundred dollars. No value is alleged or proved; and, when measured by any recognized standard of pecuniary valuation, a nomination may not easily be appraised. But an exact appraisement of the subject matter of a controversy is not always indispensable. For an actual monetary value in excess of one hundred dollars is not essential to empower this court, on writ of error or appeal, to determine causes "involving the constitutionality of a law". §3, art. 8, Const.; §4, ch. 113, and §1, ch. 135, Code; *Williamson* v. *Musick*, 60 W. Va. 532; *Typewriter Co.* v. *Piggott*, 50 W. Va. 1. Of course, to be adjudged the right to invoke this jurisdiction, it must appear with reasonable certainty, as obviously in this case it does appear, that a correct interpretation and construction of the challenged statute is vital to a just determination of the litigation. These provisions manifest an intention to make this requirement essential to confer on this court power and right to determine, on writ of error or appeal, controversies between parties where the matter in dispute is less in value than the jurisdictional amount. Not every charge of infirmity in an enactment, however, will so operate. A mere factitious or spurious assertion of constitutional invalidity will not suffice. "The court will examine and determine for itself whether such claim is well founded; and, in order for jurisdiction to attach, it must affirmatively appear that a fairly debatable constitutional question was and is involved". 3 C. J. 391. That an interpretation of the provision requiring an oath of party affiliation, in view of the constitutional provisions found in §11, art. 3, is vital to a correct solution of the questions herein involved, seems too obvious to permit of argument. The essential rights of the parties, those rights upon which the board of canvassers and the circuit court wholly disagreed, depend conclusively upon the legal validity of that requirement. It marks the point of divergence between the

different results reached in ascertaining the returns from two precincts in Logan district, so far as can be discovered by an examination of the record.

Again, it is contended that the writ does not lie, because, although an appeal lies in such cases to the circuit court under the authority of the statute, it vests that court only with such power as and no more than the board of canvassers had and exercised, and that the action of both was ministerial. In support of this contention are cited *Railway Co.* v. *Board of Public Works*, 28 W. Va. 264, and *Mackin* v. *County Court*, 38 W. Va. 338, holding that by no appellate process can this court review the action of inferior tribunals exercising merely ministerial or administrative functions; that, to be appealable, the action must essentially be judicial in nature. If sound, the proposition urged against the right denièd or restricted applies with the same degree of consistency to the right conferred by the primary act on the circuit courts. On them is bestowed generally functions purely judicial. Nevertheless, they may and do act, under legislative authority, in matters not strictly judicial. If the legislature may clothe and has clothed circuit courts with power so to act, why may it not also confer the same authority on this court? But we may inquire whether a canvass by the circuit court of primary election returns, under authority of the statute, is purely ministerial or administrative in nature. Does it not possess the essential elements of a judicial function? An affirmative answer seems to be justified by the distinctions noted in some of our decisions in tax assessment proceedings. The two cases cited to sustain the argument referred to limit the power of circuit courts to review assessments made by assessors as revised by the county courts when apparently administrative. But an adjudication of the taxability of any species of property results from the exercise of a judicial function, though involved in a tax assessment proceeding. *Distilling Co.* v. *County Court*, 62 W. Va. 442. And, while conceding the administrative character of the acts performed in assessing property for taxation by an assessor, and the review thereof by the county court, yet upon appeal by the party aggrieved, alleging illegality in the assessment,

the action of the circuit court partakes of the nature of a judicial inquiry. *State* v. *South Penn Oil Co.*, 42 W. Va. 80. A circuit court acts judicially in determining whether property is assessable for the purpose of taxation, although the assessor in making the assessment and the board of review and equalization in reviewing his action perform merely administrative functions. *Copp* v. *State*, 69 W. Va. 439. So that limitations on the powers granted by statute to agencies charged with performance of administrative or ministerial duties do not always necessarily operate to prescribe within the same limits the action of courts of record empowered to determine on review the correctness of the conclusions reached by the former; and, as regards the right to hear *de novo* and adjudge questions arising out of a primary election, it may well be doubted whether the legislature intended so to circumscribe such right of review.

Nor can the right of review on writ of error reasonably be denied on the ground that the legislature did not expressly authorize it. As later announced herein, a re-canvass by the circuit court, under the statute providing therefor, partakes of the nature of a contest between rival claimants in an election for an office, and is to be governed and controlled by the same procedural regulations. When so considered and treated, both are contests, and "controversies" within the contemplation of §4, ch. 113, and §1, ch. 135, Code. There was no special authorization regarding the right of review by this court in post election contests under §3, ch. 6, Code. But if, as held in *Williamson* v. *Musick*, *supra*, a contest for an office is reviewable here on writ of error, so is a contest for a nomination under §26a22 of chapter 3. Both contain the essential elements of a controversy.

Passing to the assignments, it is argued that the circuit court erred in its adverse rulings on the motions severally made by Gore, who appeared specially for the purpose, to dismiss the appeal on the ground that the bond and notice required by chapter 6 of the Code were not given, and the record made by the board of canvassers was insufficient to warrant the appeal. To these rulings he timely excepted, as he also did to the action of the court on his objection to its

hearing the controversy *de novo*. Baer gave neither notice nor bond. However, we are led to believe he did offer to execute the bond, but Gore later agreed not to insist upon it or to raise any objection for the want of it. This was, in effect, a waiver of that requirement, estopping him to take any advantage of the omission thereof.

The same conclusion seems warranted as to the notice, although for different reasons. ''The action of the board of canvassers, or of any political committee, at any primary election, may be appealed from by any candidate thereat, to the circuit court of the county. All such contests shall be governed by the provisions of the code of West Virginia, so far as the same are applicable, as found in chapter six thereof''. §26a22, ch. 3, Barnes' Code. Chapter 6 does of course contemplate a notice to set in motion contest proceedings. The apparent purpose is to advise the adverse party of the defects or irregularities relied on, to show the particulars in respect of which the contestant claims an office denied to him as the result of a canvass of the votes cast therefor, and to designate the votes cast for him and not counted, or cast for his opponent and counted, which erroneously have been included in the count or excluded from it in numbers sufficient to work an alteration of the result favorable to him. But it is not of individual votes cast and not counted, but of the exclusion of the votes at two precincts of Logan district, deemed illegal because the electors entitled to vote thereat failed to designate their party affiliation as required by the primary law, that Gore complains. Both contestants knew this was the sole meritorious contention between them. They had that knowledge from the beginning. That was the chief cause of the subsequent proceedings, the obvious origin and basis of the divergent opinions expressed respecting the votes cast and counted or excluded for that reason. The essence of the inquiry was the power to ascertain the result by excluding the votes so cast. Upon that issue the case was heard and determined. Gore and Baer remained personally present during the progress of the canvass, and to the same extent participated therein. Thus, it seems that every purpose to

be served by a notice was accomplished without it; and no prejudice resulted so far as can be observed.

By the next objection, Gore challenged the right of the circuit court to hear the matter *de novo*. The statute amply clothes that court with authority so to hear and determine the results of a primary. Why it may not perform that function under the power given, no convincing argument asserts and no sufficient answer suggests. By allowing an appeal, the legislature evidently intended to confer the jurisdiction exercised in contest cases between rival claimants of an office arising out of a general election, as required by §3, ch. 6, Code, and to hear *de novo* and justly determine the actual results of the primary. The section authorizing an appeal denominates the appellate proceeding a contest, and points out the regulatory proceedings therefor. Apparently, the act placed both controversies in the same category, and prescribed the same procedural regulations to govern the mode of ascertaining the rights of the claimants of a primary nomination and the contestants for an office.

The vital contention is the assault made upon the constitutionality of the act requiring the voter to indicate by his oath his party affiliation before he is entitled to express by ballot a choice between candidates in the primary election. In this discussion, it must be remembered always that we are dealing exclusively with a primary election law, and not with the right to vote in a general election. That right is not in issue now. The elections are fundamentally different. In a primary the voters of each political organization participating are conceded the privilege to determine for themselves by ballot who shall be their candidates for the different elective offices. Although voting at the same place and time, for the same purpose, they vote only within the party with which they affiliate. No impropriety appears, and none is urged, against the classification of voters by parties in a nomination election.

Moreover, primary elections are so far matters of public concern that, within legislative discretion unrestrained by any provision of the organic law of the state, they are objects of proper and reasonable regulations in the exercise of gov-

ernmental police power. *Hopper* v. *Stack,* 69 N. J. L. 562;
*Ladd* v. *Holmes,* 40 Ore. 167; *Ledgerwood* v. *Pitts,* 122 Tenn.
594; *Hager* v. *Robinson,* 154 Ky. 489; *Riter* v. *Douglass,* 32
Nev. 400. Such regulations are vital to accomplish the ap-
parent purpose and scheme of nomination elections. Classifi-
cations by parties are unavoidable. They are essential re-
quirements. Courts universally uphold them as such. Prim-
ary election statutes are based on a recognition of political
parties as governmental agencies, and are usually intended
to maintain party organizations and to secure the integrity
of their nominations. The adherents of each organization
participating in a primary may join in selecting the candi-
dates of his party for offices to be filled by the electors of all
political parties at the succeeding general election; and, while
he may finally determine to vote therein for one or more of
the nominees of any other party, he can not with propriety
participate in nominating them. That is a privilege he has
no inherent right to exercise, and of a denial thereof he can
not justly complain. These propositions are so fundamental
as to be axiomatic. None but unreasonable partisans will
controvert them. By many text-books and decisions an im-
portant distinction is noted between a general and a primary
election. They treat a primary election merely as a substitute
for a nominating caucus or convention, and not as an elec-
tion within the meaning of that term as used in constitutions.
So treated, it is a mere matter of statutory regulation within
a reasonable exercise of the police power of the state, predi-
cated on rights reserved by the people, when not forbidden
by the organic law of the municipality. This principle is
especially emphasized with reference to the qualifications of
electors and tests of party membership prescribed by prim-
ary laws. *Ledgerwood* v. *Pitts,* 122 Tenn. 587; *Hanna* v.
*Young,* 84 Md. 179; *Montgomery* v. *Chelf,* 118 Ky. 766;
*State* v. *Felton,* 77 Ohio 554; *Hager* v. *Robinson,* 154 Ky.
489; *State* v. *Nichols,* 50 Wash. 522; *Riter* v. *Douglass,* 32
Nev. 400; *State* v. *Johnson,* 87 Minn. 223; *Line* v. *Board,* 154
Mich. 329; *Morrow* v. *Wipf,* 22 S. D. 522; *Dooley* v. *Jackson,*
104 Mo. App. 21; *Gray* v. *Seitz,* 162 Ind. 1; *State* v. *Flah-*

*erty,* 23 N. D. 313; *State* v. *Woodruff,* 68 N. J. L. 89; *Kelso* v. *Cook,* 110 N. E. 987.

Finally, it is contended that the provision requiring each voter to state on oath the political organization with which he affiliates before he is entitled to vote in the primary violates the constitutional provisions that "no religious or political test oath shall be required as a prerequisite or qualification to vote", and that with certain negative exceptions all male citizens twenty one years of age or over "shall be entitled to vote at all elections held within the counties in which they respectively reside". But is the requirement of the primary election law of the political identification of the voter, verified by his signature and affivavit, in the nature of the test oath forbidden by the organic law? That identification is essential to effectuate the statute. Without that requirement, the law would be useless and inefficient. If electors can exercise the elective franchise in primaries indiscriminately, adverse partisans may dictate or procure the nomination of persons as candidates not desired by a majority of the voters of a different party organization, and thereby impose upon it undesirable nominees. But such requirement is not a test oath. It is a reasonable regulation, operating as a reciprocal protection and security against imposition by the voters of one political organization upon the adherents of another. It does not tend to impair the elective franchise, or impinge upon any constitutional guaranty or inhibition. No one is denied the right to vote. It is merely a mode of ascertaining the party affiliation of the voter. It does not assume to test the right to vote, but to identify him with the party organization for whose candidates he desires to vote in the primary. As such it is upheld in *Ladd* v. *Holmes, supra; State* v. *Drexel,* 74 Neb. 776; *Riter* v. *Douglass, supra; State* v. *Nichols,* 50 Wash. 522; *Hopper* v. *Stack, supra; Ex parte Wilson,* 7 Okla. Cr. Rep. 624; *Kelso* v *Cook,* 110 N. E. 987; *State* v. *Flaherty, supra.* As announced by these and other authorities, to prescribe reasonable regulations for exercising the elective franchise in primaries is within legislative power and competency. The statute assailed is not an unreasonable regulation. Frequently, to protect the

integrity of the ballot, it is necessary to demand and require a voter to show by his oath a valid claim of right to vote in a general election. Statutes authorizing a denial of the right, except upon verified proof showing the requisite qualifications of the proposed voter, have never been assailed in this state as violative of the constitutional provisions now in force. Electors have acquiesced in the enforcement thereof as essential and valid, without objection or complaint.

These conclusions necessitate an affirmance of the judgment of which Gore complains.

*Affirmed.*