STATE ex rel. John B. OGDEN,
Petitioner,

v.

Honorable Albert C. HUNT and Clarence
Mills, Judges of the District Court of
Oklahoma County, State of Oklahoma,
Respondents.

Beatrice H. REECE, Petitioner,

v.

Honorable Clarence MILLS, Respondent.

In the Matter of Request and Petition for
Grand Jury.

Nos. 36530, 36531.

Supreme Court of Oklahoma.

April 26, 1955.

John B. Ogden, pro se.

Fletcher S. Riley, Oklahoma City, for petitioner, Beatrice H. Reece.

Granville Scanland, County Atty. of Oklahoma County, Oklahoma City, N. S. Sherman, Asst. County, Atty., Oklahoma City, Mac Q. Williamson, Atty. Gen. of Oklahoma, Owen J. Watts, Asst. Atty. Gen., and Fred Hansen, First Asst. Atty. Gen., of counsel, for respondents.

BLACKBIRD, Justice.

As both of the applications for a writ of mandamus filed and docketed separately, as above indicated, involve the same subject matter, they are considered herein as consolidated.

Both applicants seek such writ to compel a judge of the District Court of Oklahoma County, to order a grand jury pursuant to a petition signed by 111 resident taxpayers of said county. The petition was duly filed and first presented to Judge Albert C. Hunt, of said Court, hereinafter referred to as one respondent, on May 29, last. Thereafter, on June 14th the same petition was presented to the Honorable Clarence Mills, Presiding Judge of said Court for the month of June, who is the other respondent herein. After the two judges had conferred together upon the matter, the petition was rejected by Order of June 11, 1954, signed by both. The first of the three reasons set forth in the order for denying the petition was that "the calling of a grand jury is not mandatory nor compulsory under the Constitution and laws of this State * * *". If it is determined by this Court that the ordering of a grand jury upon the filing and presentation of such a petition is mandatory, such determination will render unnecessary a decision as to the validity of the other two reasons given.

Both applicants and respondents concede that determination of whether it was mandatory or discretionary for the respondents or one of them, to so act, is governed by Art. II, Sec. 18, of the Oklahoma Constitution, which reads as follows:

"A grand jury shall be composed of twelve men, any nine of whom concurring may find an indictment or true bill. A grand jury shall be convened upon the order of a judge of a court having the power to try and determine felonies, upon his own motion; or such grand jury shall be ordered by such judge upon the filing of a petition therefor signed by one hundred resident taxpayers of the county; when so assembled such grand jury shall have power to investigate and return indictments for all character and grades of crime, and such other powers as the Legislature may prescribe: Provided, that the Legislature may make the calling of a grand jury compulsory."

It is conceded that the petition filed and presented to the respondents is sufficient in all respects to require one of said respondents to order a grand jury, if, as applicants interpret the above quoted constitutional provision, it is his mandatory duty under said provision to do so. It is likewise conceded that the determination of whether such ordering of a grand jury is mandatory, or discretionary, hinges upon the meaning of the word: "shall", as used therein. Applicants argue that as used in the provision for the ordering of a grand jury upon filing of such a petition as theirs, the order is one of command and is the equivalent of, or synonymous with: "must"; while respondents say that it is only directory and means no more than: "may".

We find nothing persuasive on the question before us in the two opinions of the Criminal Court of Appeals cited in the District Judges' order. In one of them, Hartgraves v. State, 5 Okl.Cr. 266, 114 P. 343, 344, 33 L.R.A.,N.S., 568, it was said with reference to our constitutional provision that: "It was intended that grand juries should only be convened in cases of emergency", and in the other, Blake v. State, 54 Okl.Cr. 62, 14 P.2d 240, 242, it is said: "It is wise to provide, as has been done in this State, that a grand jury may be called where prosecuting officers will

not act * * *". To us it seems clear from reading those opinions as a whole that the quoted statements were made in showing the difference between the need for, and use of, the grand jury in modern times as distinguished from the days when such matters were all controlled by the common law; and to demonstrate that under our modern statutory methods of prosecuting crime, there is usually no need to invoke the power to call a grand jury. In both cases, however, it was recognized that it was good and wise for the constitution to provide a means of exercising such power, so that it could be used when deemed desirable or necessary. The quoted expression from the Blake Case, supra, was merely referring to one situation, in which to investigate and prosecute crime, it would be *necessary* to have a grand jury ordered, to-wit: " * * * where prosecuting officers will not act". Obviously that Court in that remark and in its reference to the "emergency" in the Hartgraves Case was not trying to define or designate the sole and only reason or purpose for, or application of, such constitutional provision for the calling of a grand jury.

▮ The particular provision for the ordering of a grand jury upon the petition or a number of resident taxpayers, has been said to be found in the constitution of no other state, Snyder's Constitution of Oklahoma, Annotated, and our search of the opinions of Courts, both within and without this state, has been unproductive of any specific or direct precedent on the particular question here involved. In the construction of statutes, the word "shall" is usually given its common meaning of "must" and interpreted as implying a command or mandate, see definition of "shall" in Webster's New International Dictionary, and the cases cited in 39 Words and Phrases, beginning at page 123, depending upon the construction of the statute as a whole and the intention of the Legislature. In some cases it has been held that this is its presumptive meaning, Jersey City v. State Board of Tax Appeals, 133 N.J.L. 202, 43 A.2d 799, 803, especially where either the public or a private person has a vested right to the benefit of the statute. See In re Vrooman's Estate, 206 Okl. 8, 240 P.2d 754; Ash v. Chas. F. Noble Oil & Gas Co., 96 Okl. 211, 223 P. 175; Spokane County ex rel. Sullivan v. Glover, 2 Wash.2d 162, 97 P.2d 628; Black On Interpretation Of Laws, 2d Ed., p. 554. As said in People v. O'Rourke, 124 Cal.App. 752, 13 P.2d 989, 992, quoting from 57 C.J. 548:

" 'In common, or ordinary parlance, and in its ordinary signification, the term "shall" is a word of command, and one which has always, or which must be given a compulsory meaning; as denoting obligation. It has a peremptory meaning, and it is generally imperative or mandatory. It has the invariable significance of excluding the idea of discretion, and has the significance of operating to impose a duty which may be enforced, particularly if public policy is in favor of this meaning or when addressed to public officials, or where a public interest is involved, or where the public or persons have rights which ought to be exercised or enforced, unless a contrary intent appears; but the context ought to be very strongly persuasive before it is softened into a mere permission,' * * *"

Respondents cite Perkins v. Cooper, 155 Okl. 73, 4 P.2d 64, 67, in which this Court quoted Black on Interpretation of Laws, supra, as saying that the word "shall", when used by the Legislature in the way of imposing a duty on the courts of requiring them to take action, is usually held to involve no more than a grant of authority and is read as equivalent to "may". However, the reasons there given for the stated interpretation of said word when used in legislative enactments does not apply here where we have under consideration a constitutional provision. And, at pages 27, 28 and 29, of the same Work, it is said:

"It is not lightly to be presumed that any provision deemed essential to be incorporated in an instrument so solemn and enduring as a constitution, was designed to be merely in the nature

of a direction, without imperative force.

\* \* \* \* \* \*

"'\* \* \* It would seem to be a lowering of the proper dignity of the fundamental law to say that it descends to prescribing rules of order in unessential matters which may be followed or disregarded at pleasure.'

\* \* \* \* \* \*

"whenever the language contains a grant of power, it is intended as a mandate, not a mere direction.

\* \* \* \* \* \*

"it must be remembered that a constitution is to receive a reasonable construction, and such as to carry out the great principles of government, and not to defeat them.

\* \* \* \* \* \*

"This Court has followed the weight of authority in holding:

"Constitutional provisions are mandatory unless it appears from the express terms thereof or by necessary implication in the language used, that they are intended to be directory only." Jones v. Freeman, 193 Okl. 554, 146 P. 2d 564, 566.

See also Baer v. Gore, 79 W.Va. 50, 90 S.E. 530, 531, L.R.A.1917B, 723; State ex rel. Walsh v. Dousman, 28 Wis. 541, 542, and other cases cited in Words and Phrases, supra; 11 Am.Jur. "Constitutional Law", Sec. 69. In our opinion there is no reason for so-called legal "construction" of the word "shall" in the particular provision for the taxpayers' initiation of proceedings for a grand jury. All courts recognize that if the wording of a provision of a statute or constitution is plain, clear and unambiguous, its evident meaning must be accepted and there is no reason or justification for the use of interpretative devices to fabricate a different meaning. See authorities cited in Jones v. Bayless, 208 Okl. 270, 255 P.2d 506. In Black's work, supra, it is said at pages 33 and 34:

"Every word employed in the constitution is to be expounded in its plain, obvious, and common sense, unless the context furnishes some ground to control, qualify, or enlarge it. Constitutions are not designed for metaphysical or logical subtilities, for niceties of expression, for critical propriety, for elaborate shades of meaning, or for the exercise of philosophical acuteness or judicial research. They are instruments of a practical nature, founded on the common business of human life, adapted to common wants, designed for common use, and fitted for common understandings. The people make them, the people adopt them, the people must be supposed to read them, with the help of common sense, and cannot be presumed to admit in them any recondite meaning or any extraordinary gloss. Where a word having a technical (nonlegal) meaning, as well as a popular meaning, is used in a constitution, the courts will accord to it its popular signification, unless it is apparent, from the nature of the subject or the connection in which it appears, that it was intended to be used in its technical sense."

To the same effect, see Dixon v. Shaw, 122 Okl. 211, 253 P. 500, 504, 50 A.L.R. 1232, in which this court said:

"\* \* \* the language employed by the makers of the basic law of the state should not be given a strained or subtle meaning, but such meaning as the average citizen would conclude the language imports. This for the reason that the electorate, in ratifying the document and thereby breathing life into the same, considered the provisions as the language used fairly imports."

The institution of the grand jury is of ancient and honorable origin, being a product of the common law. It originated when there raged a conflict between the rights of the subject and the power of the crown.

"\* \* \* it served in England as a barrier between the king and the rights of the subject and secured the subject against oppression from unfounded prosecutions of the crown; and while, in this country, from the popular character of our institutions, there has sel-

dom been any contest between the government and the citizen which required the existence of the grand jury as a protection against oppressive action of the government, nevertheless the view is still taken that the institution is designed as a means, not only of the bringing to trial persons accused of public offenses on just grounds, but also as a means of protecting the citizen against unfounded accusation, whether it come from the government or be prompted by partisan passion or private enmity." 38 C.J.S., Grand Juries, § 1, p. 983.

It would thus appear that any enactment, either in our statutes or constitution, purporting to restrict the prerogative of the people to have a grand jury called is in derogation of the common law, and this is another reason why the word "shall" in the provision in question should be given its plain, unambiguous and commonly accepted meaning. In this connection, see Roxanna Petroleum Co. v. Cope, 132 Okl. 152, 269 P. 1084, 60 A.L.R. 837; 11 C.J.S., Common Law, § 12, 11 Am.Jur., "Common Law", Sec. 12.

■ There can be no doubt but that the right to initiate prosecutions for crime, like the right to initiate laws, Initiative And Referendum, Okl.Const. Art. V, Sec. 1, was one of the rights reserved by the people in framing and adopting our Constitution. To construe the word "shall" as meaning "may" in the provision under consideration would be tantamount to emasculating the provision and sentencing to death an ancient right, which the framers of the Constitution attempted to preserve by the only means available, namely, the use of plain, unequivocal, commonly understood English words.

As said in the dissenting opinion of Maxey, J., In re Investigation by Dauphin County Grand Jury, 332 Pa. 289, 2 A.2d 783, 798, 120 A.L.R. 414, 433:

"No less an authority than Chief Justice John Marshall said, in United States v. Hill, [26] Fed.Cas. [page 315], No. 15,364, 1 Brock. 156, that grand juries do not derive their powers from statutes but by implication from the constitution itself, that when courts are invested with criminal jurisdiction, grand juries are 'indispensable instrumentalities' of that jurisdiction, and that 'grand juries are accessories to the criminal jurisdiction of a court, and they have power to act, and are bound to act, so far as they can aid that jurisdiction. Thus far, the power is implied, and is as legitimate as if expressly given.' James Wilson, already referred to in this opinion, said of grand juries (Wilson's Works, vol. 2, p. 214) : 'All the operations of government, and of its ministers and officers, are within the compass of their view and research.' I will not be a party to obstructing their view or prohibiting their research."

Since before the writing of the Ten Commandments, the word "shall" has had a commonly accepted meaning, and under the principles above referred to, we are bound to give effect to such meaning in the constitutional mandate here dealt with, we hold that the provision in Art. II, Sec. 18, supra, that a grand jury "shall be ordered" by a District Judge (by a judge of a court having power to try and determine felonies) "upon the filing of a petition therefor signed by one hundred resident taxpayers of the county; * * *" is mandatory.

Respondents point out that the same word cannot have such meaning where used in the provisions of the same section for the ordering of a grand jury on the judge's own motion, and the one prescribing the power of the grand jury. They cite cases involving situations, none of which are analogous, to the effect that the same word should be given the same or a consistent meaning when used in different portions of the same enactment. They seek further support for their argument by pointing to the last sentence of the section which provides; " * * * that the Legislature may make the calling of a grand jury compulsory." They argue that such provision is inconsistent with our interpretation and

poses the question: If, by the previous provision, the ordering of a grand jury had been made mandatory, why was this last provision inserted? They strongly intimate that such interpretation as we have given the previous provision renders the latter provision meaningless. We do not agree. There is no inconsistency in the meaning of the word "shall" in any of the places it is used in this section. While said word as used in the provision concerning the power of the grand jury was not intended to require, but merely to authorize, its action, the word, as there used, relates to the grand jury's *grant* of power rather than to its *exercise* of power. As illustrative of these truths, substitute the word "must" for the word "shall" to make said provision read "such grand jury [must] have power * * *", and it will be seen that such substitution makes no effective change in the provision's meaning. The wording of the provision for the judge's ordering a grand jury "upon his own motion" makes it perfectly plain that the exercise of the power there given him is discretionary—that he may order one or not, as he desires. The quoted words preclude any idea that he *must* do so, and this provision prescribes no way to coerce or compel him to exercise such initiative or to make such a "motion". However, as will be seen in the provision that follows it, (which is the one directly in question here), another method is provided for instituting the calling of a grand jury that is not left to the initiative of the judge, but can be initiated by the taxpayers. When so initiated, it is plain that the judge is without the power or discretion to decline or refuse to make the order, but must do so if the petition meets the requirements of said section, as the one here admittedly does. This does not mean that he must act instanter or that he is wholly without any reasonable discretion as to *when* he will order the grand jury convened. It does mean, however, that

when a sufficient petition is filed, it lies beyond his prerogative to determine the necessity of having a grand jury, or to refuse to order one because he feels that "no emergency exists" or that "the prosecuting officers" of the county will investigate and prosecute any law violations coming to their attention, as the district judges here did. The framers of the Constitution did not intend to leave it to any one, or group of, officers or officials to determine finally, or at all times, whether other officers would do their duty or whether a grand jury was needed. In accord with our people's historic fear of too much power or tyranny in government (as evidenced by the Bill of Rights and many provisions of both the U. S. and Oklahoma Constitutions) these men deliberately left that prerogative to be exercised by the people in the manner provided.

To us, it also seems clear that by the last provision of the section, the framers of the constitution left the matter of calling a grand jury open to legislative enactment, so that if the people's duly elected representatives for such purpose, decided to, they might require by statute, that a grand jury be called periodically, or at a specified time or times, without leaving the matter of initiating such proceedings to a judge on his own motion, or to a petition signed by taxpayers. These views, we think, are the only ones that can correctly and properly be adopted under the principles of constitutional interpretation hereinbefore referred to, and are the ones to which we desire to adhere.

The applications for the writ of mandamus herein considered are therefore granted; and the writ is hereby ordered.

WILLIAMS, V. C. J., and WELCH, HALLEY and JACKSON, JJ., concur.

JOHNSON, C. J., and CORN, J., dissent.