**Phil S. HURST, Appellant,**

v.

**R.Y. EMPIE, Oklahoma State Banking Commissioner, and The Oklahoma State Banking Board, Appellees.**

No. 63991.

Supreme Court of Oklahoma.

April 20, 1993.

Andrew M. Coats, Mark S. Grossman, Crowe & Dunlevy, Oklahoma City, for appellant.

Mary Beth Guard, State Banking Dept., Oklahoma City, for appellees.

HARGRAVE, Justice.

Before us on appeal is an order of the State Banking Board affirming State Banking Commissioner's order removing Phil R. Hurst from the board of directors of Oklahoma National Bank & Trust Company in Sulphur, Oklahoma (Bank), finding that the attorney/director was "reckless" within the meaning of 6 O.S.Supp.1982 § 210 (subsequently amended). Section 210 provided:

> Any officer, director or employee of a bank or trust company found by the Commissioner to be dishonest, reckless, unfit to participate in the conduct of the affairs of the institution, or practicing a continuing disregard or violation of laws, rules, regulations or orders that are likely to cause substantial loss to the institu-

tion or likely to weaken seriously the condition of the institution shall be removed immediately from office by the board of directors of the bank or trust company of which he is an officer, director or employee, on the written order of the Commissioner....

The issue is whether the actions of the attorney/director in rendering a title opinion that misrepresented the status of ownership of a tract of real property and the priority of the Bank's mortgage given as collateral for a prior loan made to another director of the Bank, and his failure to inform bank of the true status of title, were "reckless" within the meaning of the above statute to mandate his removal from the board of directors.

Phil Hurst had been a director and Chairman of the Board of the Bank for approximately ten years. Hurst is a lawyer in Sulphur and represented the Bank often. His fellow-director, David R. Pittman, is a pharmacist in Sulphur and had loans totalling approximately $180,000.00 from the Bank, most of which were unsecured. The original loans became delinquent, and, in 1980, the Bank decided to obtain sufficient collateral to satisfy the bank examiners.

Hurst worked with the Bank's president and with Pittman on the collateralization of the loans. Pittman's financial statements listed ownership of two pieces of real property, approximately 90 acres in Murray County and 160 acres in Comanche County, also some oilfield and farm equipment. On June 27, 1980, Pittman executed a mortgage in favor of the Bank, describing both the Murray County and the Comanche County property.

Hurst was hired by the Bank to examine title to the real property and subsequently rendered two title opinions in September, 1980, addressed both to the Bank and to David R. Pittman. The first title opinion covered the Murray County property and was based upon examination of abstracts of title. Pursuant to that examination, Hurst rendered a title opinion dated September 3, 1980, which correctly reflected that Pittman was the record owner but incorrectly reflected that the Bank's mortgage was a first and prior lien on the property. Duncan Savings & Loan Association held an unreleased first mortgage on the property. Hurst testified that an employee of the Duncan bank told him they were going to release their mortgage, so Hurst omitted that mortgage from his title opinion to the Bank. A release of the first mortgage by Duncan Savings was not recorded until June, 1981. In September, 1981, the Bank released its mortgage on the Murray County property.

As to the Comanche County property, Hurst personally examined the records of the county clerk's office because abstracts of title were not available. In so examining, Hurst found that David R. Pittman was not the record owner of the property. The owners of record were Pittman's mother, father and sister as joint tenants. Hurst testified that he spoke to Pittman about the fact that Pittman was not the record owner and Pittman showed him a deed to the property. Hurst told Pittman that it was essential that he record the deed in Comanche County, and Hurst testified that he told Pittman: "if you'll file it I'll draw up my title opinion and we'll go ahead and file the mortgage and everything...." The title opinion, dated September 15, 1980, is quite brief and is reprinted here in its entirety:

Re: SW/4 Section 18—1N—14W Comanche Co., Oklahoma containing 160 acres more or less

ORIGINAL TITLE OPINION

Gentlemen and Mr. Pittman:

Pursuant to your request, we have examined the records in the office of the County Clerk of Comanche County, Oklahoma. From such examination it is our opinion captioned property is owned by David Ray Pittman and is subject to a valid first mortgage dated June 27, 1980, recorded in Book 1109 at page 374, executed by David Ray Pittman in favor of First Oklahoma Bank & Trust Company, Sulphur, Oklahoma, in the principal sum of $180,000.00.

This opinion is based on a record check and should be conditioned accordingly.

Yours very truly,

/s/ Phil S. Hurst

During the succeeding four years two mortgage extension agreements were entered between the Bank and Pittman. The Comanche County property is the only collateral listed in the two extension agreements, the Murray County property having been released. Three directors testified that they saw the title opinion and believed that the Bank had a first mortgage lien on the Comanche County property. A former bank examiner testified that great weight would be given to a title opinion in satisfying examiners as to existence of sufficient collateral.

In 1984 the Bank decided to foreclose the mortgage. The Bank president, along with an attorney and another director went to Pittman's place of business to tell him that they were going to foreclose on his collateral. At this point Pittman stunned the directors by saying, "I don't have title to the land, you know, I don't have a deed to the land, I said I don't think you can take it." The title opinion was pulled, and one of the directors was sent to Comanche County to check the land records. His record check revealed that record title was in Charles E. Pittman, Jr. and Naomi Pittman, husband and wife, and Charlotte Ray Whitworth, as joint tenants. The Bank had a special abstract of title prepared and had an examination done by another attorney, which examination confirmed the status of title.

Pittman testified that he did not know what happened to the deed, that it must have burned in a fire that destroyed his pharmacy about two years before the hearing. Mr. Pittman was very vague in his testimony about his deed to the property. He said he had not really looked at it, that he assumed it was a deed, that his father retained a life-estate, that he only got the south half, etc. Hurst did not recall any limiting language in the deed nor whether the deed was signed by all three joint owners or only by the father. Hurst testified that he assumed the deed was in order when he saw it.

The Bank's president notified the State Banking Commissioner of the problem and the Commissioner subsequently served a notice of hearing on the issue of Hurst's removal from the board of directors for a violation of 6 O.S.1981 § 1410.[1] After a hearing before the Commissioners at which Hurst was represented by counsel and at which Hurst, Pittman and other directors testified, the Commissioner entered his findings of fact and conclusions of law by order dated January 10, 1985, finding that Hurst's conduct was reckless within the meaning of 6 O.S.Supp.1982 § 210 (having found no "intent to deceive" under § 1410) and ordering his removal from the board of directors. Hurst appealed to the Banking Board and by unanimous vote taken at the conclusion of that hearing on February 13, 1985, the Banking Board affirmed the Commissioner's order.

On appeal Hurst argues three grounds for reversal: (1) that the Commissioner misapprehended and misapplied the applicable law, the findings not being supported by the evidence; (2) that his actions were not reckless within the meaning of § 210; and (3) that the Commissioner's actions were disproportionate to the alleged error. We shall consider each contention separately.

### I.

■ To support his argument that the Commissioner misapprehended and misapplied the law, Hurst argues that many findings of fact and conclusions of law are unsupported by the evidence. Specifically he takes exception to:

(a) Conclusion of Law Number 4 that found that Hurst acted recklessly by countenancing and negligently accepting

---

**1.** 6 O.S.1981 § 1410 provides in part:

It shall be unlawful for an officer, director, employee or agent of a bank or trust company:

(2) with intent to deceive, to make any false or misleading statement or entry or omit any state-

ment or entry that should be made in any book, account, report or statement of the institution. . . .

such a record *so that a loan would be approved* (emphasis added). Hurst argues that the evidence established that no new money was advanced as a result of the title opinion and that, therefore, the Bank was not placed in any worse position by the title opinion;

(b) Finding of Fact Number 3 that found that "President Thompson, Director Hurst and Pittman agreed to a consolidated loan arrangement". Hurst argues that he was involved in all transactions only in his capacity as attorney, and not as director, for the Bank and that he should not be removed as director for his actions as attorney;

(c) Finding of Fact Number 14 that there were grave inconsistencies in the testimony concerning the existence of whereabouts of an alleged deed and, with respect to the significant terms thereof, if indeed the document did exist. Hurst argues that there is uncontroverted testimony that the deed did exist, that Hurst saw it and relied upon Pittman to record it and that, anyway, delivery of the deed had occurred so that, presumably, the non-existence of the deed should not have been a cause for alarm by the Bank; and

(d) Finding of Fact Number 21d. that the Bank was precluded from exercising its collection options for a four-year period. Hurst alleges that this is a misstatement and not supported by the record.

The standard of review to be applied is set out in 6 O.S.Supp.1982 § 207D:

> Standard of review. The Court shall give great weight to findings made and inferences drawn by the Board or Commissioner on questions of fact. The Court may affirm the decision or remand the case for further proceedings. Additionally, the Court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the findings, inferences or conclusions are not supported by substantial evidence in the record.

Even assuming that all of Hurst's allegations above were true, the allegedly-erroneous findings and conclusions were immaterial anyway. We find substantial evidence to support the Commissioner's findings and conclusions insofar as essential to a decision under § 210. Hurst owed a duty to the Bank, both as its lawyer and as a director, to disclose fully any potentially adverse situation of which he had knowledge. Hurst was uniquely in a position to learn that Pittman was not the record owner of the land mortgaged to the Bank; the fact that Hurst had learned this in his capacity as a lawyer did not lessen his duty to the Bank as a director. In this situation his duty as lawyer and as director coincided.

It is irrelevant, to support the Commissioner's findings, whether there was, in fact, a deed. Hurst's arguments to the contrary imply that he was somehow less reckless because he saw a deed and because he relied on a fellow-director and prominent citizen to record the deed. Hurst's duty was to accurately report the status of title and the Bank's first lien position. The breach of duty was the failure to inform the Bank that its mortgagor did not have record title. At the time the title opinion was rendered, Hurst knew that the deed had not been recorded because he had personally checked the records. Hurst's actions disregarded the possible consequences to the Bank.

■ It is also immaterial, to the Commissioner's findings and conclusions, that, as Hurst argues, the Bank suffered no loss, Hurst did not profit and no new money was advanced. If this were an action seeking to hold a director monetarily liable, actual loss would constitute an element of proof. The wording of § 210 does not make actual loss a predicate for removal. For removal as mandated by § 210, the Bank and its stockholders, as well as the Commissioner, do not have to wait for actual loss to occur. The fact that Hurst received no personal gain and did not otherwise benefit from his actions does not lessen Hurst's duty to the Bank, nor does it excuse his actions. Finally, Hurst's argument that the Bank was placed in no worse position because no new money was advanced to Pittman is not well taken. Had the Bank been on notice, ac-

tion could have been taken immediately to correct the problem with the collateral, or to foreclose immediately when all collateral could be evaluated at current market value. There was testimony that the Bank probably would not have extended the mortgage if the true status of the collateral had been known. There is no question that Hurst easily could have protected both himself and the Bank by recording the deed, by noting the problem in his title opinion or by informing the other directors. At the very least he could have made a copy of the deed for his files and followed up to ensure that the deed was recorded. Hurst argues that he could not foresee the future. As an attorney Hurst was perhaps uniquely in a position, among the Bank's directors, to realize the potential harm caused by failure to record.

## II.

Hurst argues that his actions were not reckless within the meaning of § 210. Section 210 has not been interpreted previously by this Court, nor do we find any cases, from jurisdictions having statutes similar to Section 210 in their Banking Codes, which interpret those statutes. The cardinal rule of statutory construction is to determine the intent of the legislature. *Stemmons v. Universal C.I.T. Credit Corp.*, 301 P.2d 212 (Okla.1956). The term "reckless" is not defined in the Oklahoma Banking Code, 6 O.S.1981 §§ 101 et seq. In the absence of a contrary definition, we must assume that the legislature intended the words used to have the meaning attributed to them in ordinary and usual parlance. *Riffe Petroleum Co. v. Great National Corp., Inc.*, 614 P.2d 576, 579 (Okla.1980).

Webster's New International Dictionary, Second Edition, (1934), defines "reckless" as: Careless, neglectful, indifferent, inconsiderate; characterized by or manifesting a lack of due caution; rash; utterly heedless. These terms, when applied to banking practice connote imprudent or unsafe conduct that poses a threat of loss or harm to the financial institution. Section 210, read as a whole, indicates an

intent by the legislature to create a separate and distinct procedure for the state's chief banking official to order removal of an officer, director, or employee whose actions are potentially harmful to the institution. This section is independent of the statutes enumerating the powers of the Banking Board, 6 O.S.Supp.1982 § 203, and those of the Commissioner, 6 O.S.1981 § 204 (amended 1985). Section 210 was amended in 1985 to include the additional phrase "or to have engaged or participated in any unsafe or unsound practice in connection with a bank or trust company" which broadens, rather than restricts, the scope of § 210. Hurst's testimony reveals that he volunteered to show Pittman as the record owner in the title opinion, knowing that Pittman did not have record title. Hurst then took no further action to ensure that title defect was cured or made known to the Bank.

## III.

Finally, Hurst argues that the Commissioner's actions were disproportionate to the alleged error. Hurst argues that removal was too harsh a remedy, and secondly, that no time limitation or provision for subsequent reinstatement was included in the order. Hurst asks that we exercise equitable powers to remove any permanent ban on Hurst's ability to serve, if elected, on the Bank's board of directors.

Our reading of § 210 is that once a director is found to have acted recklessly within the meaning of the statute, the Commissioner is without discretion as to removal. The statute says "shall be removed." The use of shall is directive rather than permissive. It excludes the idea of discretion. See, *State ex rel. Ogden v. Hunt*, 286 P.2d 1088, 1090 (Okla.1955); *TIB Corporation v. Edmondson*, 630 P.2d 1296, 1297 (Okla.1981). Had the legislature intended discretion on the part of the Commissioner, it could have used the less restrictive language of sections 203 and 204, which enumerate the powers of the Commissioner and the Board: "shall have the power to ..." The legislature amended the banking Code, including § 210, in 1985

and did not see fit to revise the language of the statute in order to permit discretion on the part of the Commissioner.

Section 210 does not refer to the duration of the order for removal. The statute uses the term "removed" rather than "suspended". This language indicates a permanent, rather than temporary, removal. In the absence of any other direction from the statute, we decline to modify the Commissioner's order.

## THE ORDER OF THE BANKING BOARD IS AFFIRMED.

LAVENDER, V.C.J., and SIMMS, KAUGER, SUMMERS and WATT, JJ., concur.

HODGES, C.J., dissents.

OPALA, J., not participating.