## CITY OF SYLVANIA *v.* HILTON.

1. If a municipal ordinance prohibiting buildings of a certain character from being erected within prescribed fire limits is not clear, but of ambiguous or doubtful meaning, it is competent to show what has been the ordinary construction placed upon it by the municipal authorities, in order to aid in its proper construction. But if the meaning of an ordinance is plain and unambiguous, the fact that it may have been repeatedly violated without objection on the part of the municipal officers will not alter its meaning or furnish any defense to one who afterwards violates it.

2. A building constructed by erecting a wooden frame and covering it on the outside with sheets of corrugated iron, the interior, including the flooring, ceiling, etc., being entirely of wood, does not meet the requirements of a municipal ordinance which declares that within certain fire limits all buildings shall be constructed of brick, stone, or other incombustible material and covered with tin or metallic or fireproof roofing.

3. It was error to grant an injunction against municipal officers to prevent them from enforcing such ordinance against the building of a structure such as that described in the preceding headnote.

4. In so far as the ordinance is criminal in its nature, the owner of the house being built can assert his rights by defense against a prosecution under such ordinance.

Argued June 28,—Decided August 4, 1905.

Injunction.   Before Judge Rawlings.   Screven superior court. April 14, 1905.

. L. H. Hilton filed his. equitable petition against the mayor and council and marshal of the City of Sylvania, alleging as follows: Under the act of February 20, 1875 (Acts 1875, p. 186), the town of Sylvania, which had been chartered under the general laws of the State, and located in the county of Screven, was reincorporated, to be governed and controlled by sections 774 to 797, inclusive, of the Code (now sections 684 to 710 of the Political Code of 1895); and under an act of the legislature approved December 12, 1902 (Acts 1902, pp. 636, 637), it was made the City of Sylvania, the laws and ordinances of the town being left in force and made applicable to the city.   On January 7, 1897, the main business block and business portion of the town were destroyed by fire, and immediately thereafter, on January 13, an ordinance was passed of which the following are the material portions:

" An ordinance to prescribe the fire limits of the town of Sylvania, to prevent the erection of wooden buildings therein, and for other purposes.

" The common council of the town of Sylvania do ordain, that from and after the passage of this ordinance the fire limits of said town shall be the space embraced within the following territory, to wit: [describing it].

" Section 2nd.   Be it further ordained, that all buildings hereafter to be erected within said fire limits on said lots and closed street shall be constructed of brick, stone, or other incombustible substance or material, and covered with tin or metallic or fireproof roofing.   Provided, it shall and may be lawful to repair any wooden building now erected on said lots or closed streets, or to build any barn, stable, or other outbuilding -under any sheltered or covered roof now standing, with the permit of the mayor.

" Section 3rd.   Be it further ordained, that no wooden building shall be erected on the lots adjacent to said fire limits, except

by special permit of the mayor, who shall examine the locality upon which it is sought to erect said wooden building, and determine whether the erection thereof will endanger other buildings near by.

"Section 4th. Any person erecting or attempting to erect any wooden building in violation of this ordinance shall be punished by a fine not less than $5.00, nor more than $50.00, and imprisoned not more than thirty days, in the discretion of the mayor, and for the second offense said parties shall be fined not less than $10.00, nor more than $100.00, and imprisoned not more than thirty days.

"Section 5th. Be it further ordained, that any building erected in violation of this ordinance shall be deemed a nuisance; and if the party erecting or causing same to be erected, or who erected the same, shall fail or refuse to have the same removed after being duly notified, the mayor shall cause the same to be removed by the marshal at the expense of such party."

The plaintiff alleged, that the purpose and intention of the ordinance was to require buildings thereafter erected in the fire limits, if framed or constructed of wooden material, to be covered on the outside with some incombustible material or substance, such as tin or iron, and that such construction, from the passage of the ordinance to within a few days prior to the filing of the petition, had been placed on the ordinance by the mayor and council, by permitting and allowing a number of buildings to be erected within the fire limits since the ordinance was passed. Two persons, one of whom was a member of the council, were preparing to erect buildings to be framed of wood covered with sheet iron, and the mayor and council were not making any effort to prevent this, and never contended that such buildings were prohibited by the ordinance until very recently, when plaintiff was about to erect a small restaurant within the fire limits, to be so framed of wooden material and covered on the outside with corrugated iron, an incombustible material or substance. The restaurant which was being erected was to be leased to a colored woman, which met with the disapproval of the mayor and council, and for that reason alone they were endeavoring to prevent him from erecting the building. On March 6, 1905, at a called meeting, and without notice to him or giving him a chance to be heard, they had

passed an ordinance declaring the building to be a nuisance, and ordering it to be removed immediately, and served notice upon him that unless he removed it they would cause it to be done. In February, 1905, the marshal, under order of the mayor, arrested him for violating the ordinance, and without a trial imposed a fine of ten dollars on him, to which sentence he had entered an appeal to council as provided by the ordinances. Section fourth of the ordinance under which the fine was imposed is void, because the mayor and council can not impose a fine exceeding fifty dollars, nor imprison more than thirty days, and such imprisonment can only be in the alternative, while the ordinance seeks to provide a fine exceeding fifty dollars, and provides for a fine and imprisonment at the same time. Plaintiff contends that the building was not in violation of the ordinance. If defendants are allowed to tear down the building as they are threatening to do, and continue to harass him, he will be irreparably damaged. He prayed that they be enjoined from tearing down or interfering with the erection of the building, and from enforcing the prosecution against him for a violation of the ordinance.

The defendants' answer was, in brief, as follows: They admitted the incorporation of the city and the passage of the ordinance. They denied the construction placed by the plaintiff thereon. " These defendants answer that they are not bound by the construction put upon the ordinance by other city authorities, or by any mayor or council of Sylvania which has been in authority heretofore; and while the present city authorities think that some of the buildings mentioned in said fifth paragraph of petitioner's petition were erected not in compliance with said ordinance and in violation of same, that the proper construction of these buildings is not now under consideration, and has no bearing upon the determination of the present case." They admit that two persons are erecting buildings within the fire limits in violation of the ordinance, but deny that they expect to allow such buildings to be completed in that manner. When plaintiff was about to begin erecting, or had just erected, the pillars upon which he expected to construct a small restaurant within the fire limits in violation of the ordinance, in order to save him from loss they notified him of their construction, and of their intention to prevent him from building it, " not entirely for the reason that he

expected to lease said restaurant to a colored woman whose past conduct in the town they did not approve of, but for the additional reason that the building of a restaurant in the main business block, and right in the rear of a number of mercantile establishments, and where combustible substances were liable to be ignited by sparks from said restaurant, and cause danger from fire to be considerably increased." They admit the passage of the order declaring the building to be a nuisance and directing it to be removed, but deny that it was necessary to give him notice before doing so, as he knew well the meaning of the ordinance, and the order was passed so as to give him an opportunity to test its meaning. They deny that he was fined without a trial, and say that he appeared and admitted that he was erecting the building, and, as according to the construction of the mayor and council he was doing so in violation of the ordinance, he was fined, and there was no need of any further trial. The entire inside of this building is not even covered with any incombustible substance, but will be wholly of wood, and exposed to fire. To construe the ordinance as plaintiff seeks to do would practically nullify it, and destroy the beneficial results that were intended to be reaped from adopting it.

After hearing evidence the presiding judge granted the injunction, and defendants excepted. They assign error because of the admission, over objection, of evidence as to what certain witnesses thought the mayor and council meant by the passage of the ordinance; because another witness was allowed to testify, over objection, as to the construction placed upon the ordinance by various officers of the city at the time of its passage, and since; because of the grant of injunction; and because the court erred in not construing the ordinance in accordance with its written words, instead of according to parol testimony that other buildings of like character had been constructed since its passage, and held that this building could be erected because the city authorities had allowed other buildings of like character to be erected in the past.

*H. S. White*, for plaintiff in error.        *E. K. Overstreet*, contra.

LUMPKIN, J. (After stating the facts.) Some of the evidence introduced by both sides was incompetent, such as statements that "it was the understanding of deponent, and he thought that it was the understanding of other members of council," etc.; and

that "said ordinance meant," etc.    The substantial question, however, is whether the ordinance was so clear and unambiguous as not to require the aid of extrinsic evidence for its construction, or whether resort could be had to evidence that other buildings had been erected similar in character to this one, without objection on the part of the municipal authorities, for the purpose of throwing light on the meaning of the language used.    If an ordinance is plain, clear, and unambiguous, it needs no aid from parol evidence for its proper construction.    In such event the mere fact that it has been violated several times or many times would afford no excuse or reason for another violation, nor would it confer any right on others to violate it.    To illustrate, if an ordinance prohibited the shooting of firearms within the corporate limits, upon the trial of one who violated it the fact that others had committed a like breach of the ordinance and had gone unpunished would furnish no defense to him.    So it is also in regard to a State law.    It would be no defense to one tried for larceny to show that many other larcenies had been committed and the criminals had escaped without prosecution or punishment, although known.    If, however, a building ordinance, or an ordinance prescribings fire limits is not clear, but is of ambiguous or doubtful meaning, it is competent to show what has been the ordinary construction placed upon it by the municipal authorities, in order to arrive at a proper construction of it.    1 Dill. Mun. Cor. (4th ed.) § 93; 1 Smith's Mun. Cor. §§ 540, 541; McQuillin's Mun. Ord. §§ 73, 289, 290; State v. Severance, 49 Mo. 401; Cole v. Skrainka, 105 Mo. 303; Saunders v. Nashua, 69 N. H. 492.    In McQuillin on Municipal Ordinances, § 292, it is said: "The general rule is that the meaning of an ordinance must be gathered from the law itself, and not from contemporaneous statements of the individuals who framed it or those who voted for it. This rule is particularly enforced where the provisions of the ordinance are clear.    In such case, contemporaneous construction adopted by the municipal officers charged with its enforcement will be held inadmissible to aid its construction.    However, in doubtful cases where the language of the ordinance is ambiguous, a contemporaneous construction adopted by the parties interested in the enforcement of the ordinance, while not controlling, is entitled to great weight."    See also Tiedeman on Mun.

Cor. § 159. The rule is similar in construing statutes. Brown v. U. S., 113 U. S. 568; Sherwin v. Bugbee, 16 Vt. 444; Frazier v. Warfield, 13 Md. 279. So, if the terms of a contract are clear and unambiguous, they can not be changed by proof of usage. Kimball v. Brawner, 47 Mo. 398. The question then is, within which of these rules does the ordinance under consideration fall? It is clear that the construction sought to be put upon it by the plaintiff can not stand. The expression, "and covered with tin or metallic or fireproof roofing," plainly refers to the roof of the building, not to its sides. Certainly it can not be contended that the municipal council intended to provide for a building to be covered all over with roofing, whether tin, metallic, or fireproof. Roofing means the materials for a roof, and it needs no argument to show that this ordinance did not mean to provide for covering the sides of the house with materials for the roof.

The only question remaining, then, necessary for a construction of this part of the ordinance, is whether the word "incombustible" is ambiguous so as to allow it to be construed by parol evidence showing that other houses had been built similar in character to that of the plaintiff. The Century Dictionary defines the word to mean "not combustible; incapable of being burned or consumed by fire." In Payne v. Wright (1892), L. R. 1 Q. B. Div. 104, the meaning of the word was under consideration. The metropolitan building act provided that the roof of every building should be covered externally with "slates, tiles, metal, or other incombustible materials." The roof of a building was covered externally with materials consisting of woven iron wire coated with an oleaginous compound. The coating would ignite and burn away, leaving the wire work uninjured. It was held that the roof was not covered with "incombustible materials" within the meaning of the act. Mathew, J., said: "The findings of the magistrate seem, however, themselves to answer the question put to us, for he finds as a fact that the material was partly combustible and partly incombustible. Upon these findings how is it possible for us to say that, as a matter of law, this material was incombustible within the meaning of the act? . . It is true that the magistrate finds that this material is, for some reasons, safer than glass, but that does not make it incombustible." A. L. Smith, J., said: "Sect. 19 provides that the roof of

every building shall be covered with slates, tiles, metals, or other incombustible materials. Does that mean 'other materials' which are wholly incombustible, or materials which are partly, combustible (and partly incombustible? In my opinion it means materials wholly incombustible." The evidence in the present case shows without controversy that the entire framework of the house is of wood, and that it is to be covered on the outside with thin plates of corrugated iron. There is no contention that wood is incombustible, so that the material of which the entire framework of the house is built is combustible, and only a part of the material used, being the outer coating or covering, is incombustible in character. There are also other parts of the building composed of wood, such as the floor, ceiling, etc. Thus the case cited is directly in point. In Badley ᴧ Cuckfield Union Rural Dist. Com., 72 L. T. R. (N. S.), (Q. B. Div. 1895) 775, the following ruling was made: " One of the bye-laws made by the defendants, as rural sanitary authority, required all new buildings to be 'inclosed with walls constructed with good bricks, stone, or other hard and incombustible materials properly bonded,' etc. The plaintiff proposed to erect a sanatorium for his school, consisting of corrugated sheets of galvanized iron one thirty-second of an inch in thickness, with a layer of felt inside, fixed to the outside of a framework of wooden upright and horizontal posts and rails, with wooden match-boarding inside. Held, that the galvanized iron alone was not a wall, and that the structure combined of wood and iron which constituted the wall was not of hard and incombustible materials as required by the bye-law." Lord Russell, C. J., in the opinion, said: " I think, therefore, for the purposes of this case we must regard the wall as consisting of at least the wooden post and frame and the sheets of corrugated iron. Can that be called a wall of incombustible material? I think decidedly not; and the case is made stronger if we include the felt and the match-boarding."

In Ward v. Murphysboro, 77 Ill. App. 549, an ordinance was under consideration which declared it unlawful for any person, company, corporation, or firm to erect, build, or commence the erection, within the fire limits of the city, of any wooden or frame building or structure exceeding a certain size. Certain persons erected within such limits a building having a wooden

frame structure, one side, the ends, and the roof of which were covered with wooden sheeting, and this was covered with corrugated iron, the spaces between the studding being filled with loose brick. As the building was nearing completion, the mayor, marshal, and aldermen of the city, without giving notice to remove the building, tore it down, for which the owners brought suit in trespass. The defendants pleaded in justification the ordinance referred to. The trial court declined, on request, to charge the jury, "The court further instructs you that the plaintiffs had a right to show by evidence, if they can, the fact, if such appears to be a fact from the evidence, that the city has permitted similar buildings to be erected and constructed, within the fire limits of Murphysboro, as the one alleged to have been torn down by defendants, for the purpose of showing the construction the city and its officers themselves place upon said ordinance as to what buildings it prohibited." On this point the appellate court ruled as follows: "If the city officers had tacitly allowed that portion of the city included in the fire limits to be filled with frame buildings no better than tinder boxes, such fact would have thrown no light upon the true construction of the fire ordinance. When the ordinance was duly passed and published, it became a law of the city, and the city officers had no more right to disobey the law or suspend it, enlarge or construe it away, than any other person." See also Tuttle *v.* State, 4 Conn. 68, 70. It has been said: "Where a municipal corporation has power to prohibit the construction of wooden buildings within a district and has enacted an ordinance to that effect, it may remove any building erected in violation of the ordinance, and this, too, without any judicial proceedings whatever." 13 Am. & Eng. Enc. L. (2d ed.) 400, and notes. As to the general powers of this municipality see Political Code, § 696. In Stewart *v.* Commonwealth, 10 Watts, 306, it was said: "On an indictment charging the defendant with erecting a wooden building within the City of Pittsburg, contrary to the ordinance, the jury found that he had erected a building composed partly of brick and partly of wood: Held, that such building was not within the ordinance." This decision, however, was made in a criminal case, where the rule of construction applicable to criminal laws applied. In the opinion Sergeant, J., said: "If this

were a remedial law, it might be construed liberally, so as to effectuate the design of the legislature, which was to guard against the danger of fires in a populous city. But being a penal statute, and this proceeding of a criminal cast, the rule of law is well settled, that such statutes are to be construed strictly, and that no one is to be brought within the penalty of the act who is not within the plain meaning of the words, strictly construed: and they are confined to wooden buildings only." The ordinance now under consideration only provides for punishment by fine and imprisonment if any person shall erect or attempt to erect "any wooden building in violation of this ordinance." A building of the character of that described in the evidence is not, strictly speaking, a wooden building, although, as held above, it is not constructed of incombustible material within the meaning of the ordinance. So far as the criminal proceeding is concerned, therefore, it is not sustainable under the ordinance. But it was not proper to grant an injunction to stop the prosecution, inasmuch, as the plaintiff can assert all his rights by way of defense.

That part of the ordinance which provides for notifying the owner to remove the building, and, on his failure or refusal to do so, that the mayor shall cause its removal, is not confined to a wooden building strictly so called, but applies to "any building erected in violation of this ordinance." Under the law we are of the opinion that the presiding judge erred in granting the injunction.

*Judgment reversed. All the Justices concur, except Simmons, C. J., absent.*