CITY OF TULSA v. JOHNSON et al.

No. 30727. May 18, 1943.

Rehearing Denied Sept. 28, 1943.

Application for Leave to File Second Petition for Rehearing Denied Feb. 8, 1944.

145 P. 2d 198.

E. M. Gallaher, John W. McCune, Thos. I. Munroe, and C. Lawrence Elder, all of Tulsa, for plaintiff in error.

Eldon J. Dick and Lou Etta Bellamy, both of Tulsa, for defendant in error Emmett Johnson.

DAVISON, J. On November 29, 1938, Emmett Johnson was discharged from the police force of the city of Tulsa. Approximately two years later, on November 6, 1940, Johnson instituted this action against the city of Tulsa and certain named officials thereof seeking in a first cause of action to recover his salary as policeman from and after December 1, 1938, and in a second cause of action to obtain a mandatory injunction restoring him to his position as a member of the police force of the city of Tulsa.

Issues were joined by the defendant city. When the cause came on for trial in June of 1941 a jury was impaneled. The issues in connection with the first cause of action were submitted to the jury, while the second cause of action was decided by the court without the aid of the jury. The verdict and judgment on the first cause of action was for the plaintiff, fixing the amount of his recovery from the defendant at $4,525. The second cause of action was decided in favor of the defendant.

The city of Tulsa has appealed seeking a review and reversal of the judgment against it. The plaintiff presents a cross-appeal in connection with the decision adverse to him on the second cause of action.

We shall first consider plaintiff's right to recover a money judgment. The plaintiff recovered upon the theory that by reason of the charter provisions of the city of Tulsa the right of that municipality to discharge the members of its police force was restricted to discharges for cause after an opportunity to be heard, and to discharges from positions abolished for economical reasons, that is, because of the financial inability of the city to carry the burden created by the position; that the position he occupied was not abolished, thus he could not be discharged during good behavior.

The city seeks to justify the discharge upon financial considerations, and asserts in substance that it could select from the available police force the persons to be discharged. It asserts that the allowance of recovery herein constitutes a violation of the constitutional limitations on indebtedness. It does not contend that there was an absence of good behavior on the part of the plaintiff.

Section 3 of article 18 of our State Constitution authorizes municipalities of this state to adopt a charter as the organic law of the city. The charter, however, must yield to the Constitution and general laws of the state. Ramsey v. Leeper, 168 Okla. 43, 31 P. 2d 852; City of Tulsa v. Dabney, 133 Okla. 54, 270 P. 1112. The city of Tulsa has adopted such a charter. Section 30 of article 11 thereof provides:

"All policemen and firemen of the City of Tulsa shall hold their positions during good behavior, and shall not be removed from the same except for such cause as in the opinion of the Board of Commissioners renders them unfit to remain in the service of the city, and after written notice, giving the grounds for such discharge or removal and an opportunity to be heard on such charges or reasons."

The rights accruing under this charter provision must of course be exercised in such a manner as to conform to the restrictive provisions of our Constitution. Thus the same cannot be made an avenue for exceeding the debt limit provided by section 26 of article 10 of our State Constitution prohibiting municipalities from incurring indebtedness in any year beyond the income and revenue provided for that year. Jurd v. City of Tulsa, 183 Okla. 239, 80 P. 2d 596; City of Sand Springs v. Kraus, 181 Okla. 6, 72 P. 2d 726.

Thus, when the personnel of the police force is reduced for economy reasons resulting in the abolition of a position, the person holding that position may be dismissed independent of the absence of good behavior on his part. City of Tulsa v. Suttle, 182 Okla. 283, 77 P. 2d 104. Notice, also, City of Shawnee v. Hewett, 37 Okla. 125, 130 P. 546.

The situation presented in the case at bar is somewhat different from that treated by us in the Suttle Case, supra. While the city seeks to justify the discharge upon financial considerations, it does' not claim that the particular position occupied by the plaintiff was abolished at the time of his discharge. However, other positions on the police force were discontinued and one of the persons holding such a position was transferred to the position held by the plaintiff when he was released. Both of the men were "policemen" within the meaning of that term as it appears in the city charter.

The question then is whether the city may in connection with lessening the number of its policemen for financial considerations, without doing violence to its charter provisions, reorganize its police department by transferring policemen from one position to another and thus discharge members of the police force from positions not abolished and fill the vacancies from positions which have been discontinued. That is what the city of Tulsa did in this case.

The plaintiff became a policeman of the city on July 1, 1934. He was assigned to duty as a radio patrolman. He served in that capacity until his discharge, November 29, 1938.

While various reorganizations of the police department took place between the date of the commencement and termination of plaintiff's employment, his continued services were as a radio patrolman.

On June 30, 1938, the city by ordinance fixed the personnel of the police department at 141 men and classified them according to duties. In addition to other classes not herein necessary to enumerate, it provided for 29 uniform radio patrolmen and 29 detectives.

The ordinance contemplated that subject to a maximum fixed in the ordinance the salaries of the various members of the police force should be fixed by resolution, and it also provided that the persons to occupy each of the various positions should be designated by resolution.

By resolution of July 1, 1938, the plaintiff and 28 others were designated as uniform radio patrolmen and their salary fixed at $1,800 per annum. 29 detectives were listed at a like salary.

The total salaries as fixed by the resolution exceeded the appropriation made by the excise board for the fiscal year by $17,377.50. The police department operated in accord with the resolution until and including November, 1938. The impending deficit created the necessity for some economy measure. On November 29th, an ordinance with the emergency clause was enacted reducing the personnel of the police department from 141 men to 126. The number of uniform radio patrolmen remained the same; the number of detectives was reduced from 29 to 28. The salaries were maintained at their previous level.

On the same day the board of commissioners by resolution assigned individuals to the various positions. Plaintiff was not named as one of those retained. Plaintiff had been working in the same patrol car with one Claude Lynch who was also dismissed. Plaintiff was notified in writing of the reason for his discharge in a communication from the commissioner of police and fire which read in part as follows:

"I regret very much at this time to notify you that effective December 1, 1938, your services will be no longer needed with the Tulsa Police Department.

"Your dismissal is caused by a financial situation in the police department budget, and there being no available surplus to handle this deficit, I am forced to cut the personnel in order to pick up this deficit by the end of June 30, 1939. . . .

"Yours truly,

"Eddie J. Shields, Commissioner of Police and Fire."

After the discharge of plaintiff and Lynch, the patrol car which they had been using was taken over by two men who had previously been performing the duties of detectives in the police department.

The gist of plaintiff's position in this litigation is expressed in the following excerpt from his brief:

"Likewise a person appointed to an office in the uniform radio patrol holds his office in the radio patrol and not in any other functional division of the police department, which likewise applies to uniform traffic patrolmen, foot patrolmen, etc. Each of these officers has a right to the special position to which he was, under direction of said section of said ordinance, appointed by resolution until he is removed under the directions of the charter or his office abolished by an ordinance creating a less number of offices in such functional division.

"It cannot be successfully contended, therefore, that the reduction of an office in one functional division permits the removal of an officer in some other division than the one in which the position was abolished, any more than to abolish the office of city treasurer would

justify discharging the city auditor. . . . ."

The position taken, though plausible, is not legally sound. The charter provision which plaintiff invokes for his protection runs to all policemen as a general group. It does not apply separately to any particular assignment or subdivision within the group. No inhibition exists in the charter preventing a transfer of policemen from one assignment to the other as the welfare of the department may require. The different assignments within the police department cannot be accurately compared with independent departments or officers of the city government such as the city treasurer or the city auditor.

Plaintiff in support of this argument calls our attention to the case of the City of Tulsa v. District Court of Tulsa County, 174 Okla. 470, 51 P. 2d 511. He points to the portion of the opinion in that case comparing an appointment as policeman to an election to office. The cited case did not involve a transfer from one department to another within the police department. It adds no strength to plaintiff's argument.

Referring again to the charter provision, it is to be noticed that it does not establish any system of seniority among members of the police force, and since the number thereof under the decisions of this court, cited supra, may be reduced for financial reasons, it follows that a measure of discretion rests with the governing officials of the city in determining who shall or may be discharged. Presumably that discretion was exercised in accord with the best interests of the municipality. When and if a case is presented in which evidence is introduced tending to show the discretion is abused, we may be called upon to decide whether the discretion is purely legislative in character or subject to judicial control. The pleading filed by the plaintiff in this case implied an alleged abuse of discretion. However, this phase of the pleading was not supported by proof. Bad faith on the part of the municipal officers cannot be presumed.

When it became apparent in November of 1938 that a deficit would result in connection with the police department unless some economy measure was adopted, it was proper and legal that the board of commissioners should either reduce the number of policemen or the amount of their salaries. They chose the former alternative. At the same time their duty as commissioners required that they preserve within the police department as much efficiency as possible consistent with charter requirements. They could not discharge anyone without cause and a hearing except to the extent necessary for reasons of economy, but they could select from the personnel of the department those who in their judgment would render the best service to the municipality. Coincident with their decision as to what assignments of duty should be dispensed with, they decided who should be retained for the performance of those duties. No new employees were placed on the police force.

The protection afforded by the city charter is to policemen generally. All the other members were entitled to the same protection as the plaintiff. Nothing in the charter prevented the transfer herein made. The board of commissioners was compelled to exercise its discretion as to who would be retained and in doing so could and did make a reassignment as to duties among those retained.

Plaintiff suggests in effect that the action of the board of commissioners fixing the number of policemen at 141 on July 1, 1938, constituted a deliberate action on the part of the commissioners to place on the police force more men than could be paid and with the intention then to later reduce the number. There is nothing in the record to sustain this contention. There were 140 policemen at the close of the previous fiscal year. The increase was one. At the first of the fiscal year, July 1st, the appropriation had not been made. There is nothing in the record to indicate that the expenditures for personnel as fixed by the ordinance at that time

exceeded the amount which the commissioners might have believed in good faith would be made available for expenditure by appropriation.

This absence of supporting evidence dispenses with the necessity of discussing whether such a motive on the part of the commissioners would have entitled the plaintiff to relief, and if so, whether plaintiff's effort to obtain relief was timely.

The money judgment against the city was erroneous under the authorities above mentioned and for the reasons above stated. For the same reasons the trial court properly refused to grant the requested mandatory injunction. Its judgment in the latter respect is affirmed; otherwise, it is reversed and remanded.

CORN, C. J., GIBSON, V. C. J., and OSBORN, BAYLESS, WELCH, HURST, and ARNOLD, JJ., concur. RILEY, J., dissents.