JONES et al. v. BAYLESS et al.

No. 35663.　March 31, 1953.

*255 P. 2d 506.*

A. M. Widdows, Edmund Lashley, and William M. Fleetwood, Jr., Tulsa, for plaintiffs in error.

Thurman S. Hurst, Saul A. Yager, and Edwin S. Hurst, Tulsa, for defendants in error.

BLACKBIRD, J. Defendants·in error, Tulsa city policemen with ranks and grades varying from sergeants to captains, commenced this action as plaintiffs to restrain and enjoin plaintiffs in error, as defendants, from demoting them to other policemen's positions of inferior rank with attendant reductions in salary, responsibility and dignity.

The threatened demotions were to be made without regard to said plaintiffs' "good behavior", without notice and hearing, not for economic or financial reasons, not for the purpose of reducing the number of policemen in the department, nor to reduce the number of positions within any one rank or grade, but in order to promote policemen of lesser rank to the positions now held by plaintiffs. Upon the filing of plaintiffs' verified petition alleging, among others, substantially the above facts, the trial court issued a temporary restraining order forbidding the threatened demotions.

Upon joinder of the issues and stipulation of such facts, and the introduction of evidence not now necessary to mention, the cause was tried without a jury. By judgment entered June 3, 1952, the court found the issues in favor of the plaintiffs and issued a permanent injunction against defendants. Thereafter defendants filed their motion for a new trial. It was heard and overruled on June 6, 1952. At said hearing the defendants gave notice of appeal and requested the court to fix a bond to be given by plaintiffs

to indemnify them against any damages they might sustain, including reasonable attorney fees, in the event it was finally determined that the permanent injunction ought not to have been granted. The court acceded to this request and included in its order overruling defendants' motion for a new trial a further order requiring plaintiffs to file such a bond in the amount of $10,000, within fifteen days, during which period the temporary restraining order granted before the trial was to continue in force and effect. The next day, plaintiffs filed an application to change said order insofar as it required the plaintiffs to give a bond, and upon a subsequent hearing held on this application thirteen days later, or on June 20, 1952, defense counsel called the police and fire commissioner to testify as to the amount of money the threatened demotions would have saved the city of Tulsa during each month that they were restrained and enjoined. The court, upon objection by the plaintiffs, refused to admit this testimony and entered an order vacating that part of its previous order on the motion for a new trial pertaining to the making and filing of the hereinbefore mentioned bond.

Defendants' appeal to this court is by petition in error and case-made. Our continued reference to the parties will be by their trial court designations.

Defendants' first proposition is that the trial court erred in holding for plaintiffs and determining, in effect, that the threatened demotions of plaintiffs constituted removals or discharges without a hearing, forbidden by section 5 of article XIV of the Tulsa city charter. The pertinent parts of this article are as follows:

"Section 1. Amendment, amending paragraph 30, Article 11, of the Charter of the City of Tulsa, by repealing the same, and adopting in lieu thereof the following amendment relating to the qualification, appointment and tenure of *policemen and members of the police department of the City of Tulsa,* except the Chief of Police of said City, whose qualification, appointment and tenure is not included in this amendment, nor affected thereby.

"Section 2. * * * No person shall be eligible to appointment, or to be appointed, or serve as a policeman or member of the police department of the City of Tulsa who shall have been convicted of any offense, the punishment of which may be confinement in the State Penitentiary; nor shall any person be appointed who is not shown to be of good character, or who can not read and write the English language, or who does not possess ordinary physical strength and courage. *All policemen or members of the police department,* of the City of Tulsa shall hold *their positions* during good behavior, and shall not be removed from *the same* except for such cause as in the opinion of the Board of Commissioners render them unfit to remain in the service of the City, and after written notice, giving the grounds for such discharge or removal and an opportunity to be heard on such charges or reasons.

"Section 4. Finger print and Identification Members, Bertillonists, Mechanics, Ballistic Experts and Radio Operators, being a special class of skilled members of the Police Department, in case of reduction of their number, by abolishing any of their offices or positions therein, shall, when the number of such members are increased, be reinstated to *their respective positions* or offices in the same manner and procedure provided for reinstating other members in said department. And a decrease or increase in the number of policemen or members not belonging to the above class, shall, in no way affect the decrease or increase in the number of the above class of skilled members, nor their right of reinstatement to their respective positions.

"Section 5. Provided, however, that *any policeman,* or member *so removed* shall within thirty (30) days from the date of such removal, make written application or request to the police commissioner of the City of Tulsa for reinstatement. The person making such application or request shall retain a copy of same, upon which shall be

endorsed the date of the service of the original notice upon the police commissioner of said City, and said Police Commissioner shall sign his name thereto. The original notice shall be immediately filed with the City Auditor of said City, who shall endorse thereon the date of such filing. Said original notice, or a copy thereof, so endorsed and signed, shall be evidence of the fact of the service of said notice.

"Section 6. Provided, further that *such policeman,* or member, *must remain a resident of the City of Tulsa,* and must be able to comply with all of the provisions of this Amendment, with reference to eligibility for the original appointment in said Police Department.

"Section 7. The term, 'member of the police department,' as used herein, means: All persons other than policemen appointed in said department whose duties are to assist in the operation and functioning of the police department of said City of Tulsa." (Emphasis ours.)

Plaintiffs contend and trial court was evidently of the view that section 2, above quoted, gives them the right to their *respective* positions unless "removed" from them for cause rendering them, in the opinion of the board of commissioners, unfit to remain in the particular grade or rank in which they respectively are serving and they cite many cases in an attempt to show that a "demotion" is a "removal" within the terms of the quoted article. At the trial, some of the officers' commissions were introduced in evidence to show that they were issued for the duration of "good behavior", while defendants, on the other hand, introduced various exhibits referred to in their argument to show the history of Tulsa's municipal legislation on this subject and related ones and to demonstrate that it is not article XIV's purpose to forbid demotions or promotions within the class of police department employees referred to in said article as "policemen".

If, as we view this article, its wording was not plain and unambiguous, then considerable reliance might need to be placed upon such evidence to arrive at the true meaning and interpretation of the article. But, as we view it, that is not the situation, and it is neither necessary nor appropriate to go outside of its provisions to determine its true meaning. 37 Am. Jur. p. 828, par. 187, and cases cited in Notes 17 and 18 thereto. In the cited text it is very aptly said: "A court in construing an ordinance or charter must take its evident meaning as it reads * * *." If its wording is plain, clear and unambiguous, it needs no aid from parol or other evidence, for its proper construction. 37 Am. Jur. p. 828, Note 19; Sylvania v. Hilton, 123 Ga. 754, 51 S.E. 744, 2 L.R.A. (N.S.) 483, 107 Am. St. Rep. 162. If, at the same time, its meaning is reasonable and practical in application and in view of the purposes the legislation was intended to serve and the objects sought to be accomplished, then the courts have no justifiable reason for, and no power to, go beyond said wording or to fabricate a meaning that can only be arrived at by the insertion of additional or different wording therein. That would be legislating, which is not a function nor within the prerogatives of the courts.

We think it clear, from the fact that section 2 of the article deals with "policemen and members of the police department" collectively (prescribing the conditions for their eligibility, appointment and service, as such, to the city of Tulsa), that the word "positions" therein refers to employment in the police department as a whole or generally. It will be further noted that this plural or collective subject in that part of section 2 pertaining to removals, is used again preceding the word "same", which unmistakably relates back to it. The section reads: "All *policemen* or members of the police department shall hold *their positions* * * * and not be removed from *the same* * * *", rather than: "Each policeman or member of the police department * * * shall hold his position * * * and shall not be removed from it except for such cause

* * *." Manifestly, the provisions with reference to removal refer to "policemen" collectively rather than to the position or rank of any separate or individual one. The interpretation contended for by plaintiffs would make it necessary to insert the word "respective" between the words "their" and "positions" or in some other manner, narrow, restrict or qualify the broad reference evident in the words: "their" and "same". To us, it is obvious that this was not the meaning intended by said section. In this connection, it is noted that the expression "their respective positions" *is used* in section 4, dealing with the reduction of the number of "finger print and identification members, Bertillonists, mechanics * * *" etc., in said department. It is only reasonable to conclude that if the framers of the article had intended section 2 to be interpreted as plaintiffs contend for, they would and could readily have inserted the word "respective" in the same relative position between the words "their" and "positions" in that section, as they did in section 4.

In view of this fact, it can only be assumed that the inclusion of the word "respective" in section 4 indicates an intent to exclude it from section 2, and that its exclusion from this section was deliberate—that it was not contemplated that each individual policeman or member of the police department should remain "in the same capacity" in the service of the city, "in which he was then serving" unless removed for cause and after written notice, as plaintiffs contend. In this connection see Hopkins v. Hopkins, 287 Mass. 543, 192 N.E. 145, 95 A.L.R. 1286, and 50 Am. Jur., 258, pars. 267 and 269. Such a meaning would drastically hamper and restrict, if not completely curtail, all reapportionment or redistribution of policemen within the department; thus hindering and tying the hands of those charged with the responsibility of its operation and efficiency. Defendants point this out and suggest that such a narrow and restrictive construction of the section would not only prevent demotions without a hearing, but by the same token would seem also to prohibit promotions, and other changes, transfers of re-assignments, detrimental not alone or the department as a whole, but also to the individual policemen, themselves. Detailed elucidation is not necessary to demonstrate that with reference to a law enforcement agency, the leaving of "square pegs" in "round holes" could result not only in loss of efficiency, waste of money and dire consequences for the public generally, but it could very conceivably result in loss of life by policemen themselves.

We think our interpretation of the article is rendered even more eminently correct by sections 5 and 6 thereof dealing in more detail with the preliminaries for removal of a policeman. It will be noted that section 6 apparently contemplates that such a policeman (after removal) may move out of the city of Tulsa, and it prescribes as a condition for reinstatement that he "must remain a resident of the City of Tulsa" and keep himself eligible as for an original appointment. Manifestly, such a move or departure would not be anticipated as incident to a demotion, or promotion in rank, or transfer or reassignment within the department, in all of which instances the policeman, remaining an employee of the department, would presumably also remain a resident of the city of Tulsa, with no break in or lapse of his original eligibility. Also, this interpretation conforms with a previous one by this court of similar wording in the superseded section 30 of the Tulsa charter's art. XI, in the case of City of Tulsa v. Johnson, 193 Okla. 501, 145 P. 2d 198. There it was argued that each officer had a right to the special position to which he was appointed, until removed through similar procedure prescribed in that article, and we said:

"The charter provision which plaintiff invokes for his protection runs to all policemen as a general group. It does not apply separately to any par-

ticular assignment or subdivision within the group. No inhibition exists in the charter preventing a transfer of policemen from one assignment to the other as the welfare of the department may require. The different assignments within the police department cannot be accurately compared with independent departments or officers of the city government such as the city treasurer of the city auditor."

The views above expressed have been followed repeatedly in a group of cases involving the same section of the Tulsa charter, among the more recent being City of Tulsa v. Jacobs, 194 Okla. 189, 148 P. 2d 172.

We fail to see how reference to the charter's art. XIII, pertaining to the city's fire department, which was enacted several years before the one involved here, in any way bolsters plaintiffs' argument. On the contrary, it would seem to support the view we have taken, because section 4 thereof contains the specific word "respective" between the words "their" and "positions", which was left out, but plaintiffs have tried to read into, the phrase or expression involved here. Also, the fire department article has many other differences, the most decisive of which, for the purpose of this inquiry, are provisions dealing specifically and in detail with demotions and promotions upon the specific basis of "merit, efficiency and fitness," Then, too, if it were not already established to the point of certainty that like expressions and provisions were not intended to be incorporated in the article before us, casual reference to some of the history of such legislation in Tulsa would seem to point to the same conclusion. In this connection, it is found that the essential difference between removal of an officer, on the one hand, and his promotion, demotion, · or transfer, on the other, was recognized in sections 3 and 11 of Ordinance 5280, enacted May 27, 1947, and specifically repealed by Ordinance No. 5485 almost a year later. Section 3 of this superseded ordinance specifically allowed the police commissioner to transfer any policeman or employee (except the chief of police) "in his sole discretion," but protected seniority rights in case of such transfer, etc. Section 11 specifically protected the ranks of individual policemen regardless of changes in the city administration and specifically prescribed the procedure for notice and a hearing on "demotions." The now effective repealing Ordinance No. 5485 specifically retains for the police commissioner his discretionary right to effect transfers, but repeals and abandons the provisions of the previous ordinance protecting or "freezing" (as defendants call it) policemen's ranks after changes of administration, as well as the former provisions requiring notice and hearing in cases of demotions.

In support of their construction of art. XIV, plaintiffs cite cases construing Teacher Tenure statutes, Civil Service statutes and Home Rule Acts, of other states, providing various merit plans for personnel administration. Some of the reasoning by these courts, such, for instance, as the demonstration that an employee may quite as effectively be "removed" (from some practical standpoints) by demotion, as by actual discharge, are persuasive, but not controlling. In this connection, see 62 C. J.S. 1510, 1511, pars. 737 and 738. As hereinbefore indicated, the matter before us is controlled by the city charter in question and not by general laws or by the special enactments of other municipalities, governmental units or jurisdictions. Goodwin v. Oklahoma City, 199 Okla. 26, 182 P. 2d 762; City of Wewoka v. Rodman, 172 Okla. 630, 46 P. 2d 334; Hinz v. Hubbard, 95 Okla. 164, 216 P. 440; Walton v. Donnelly, 83 Okla. 233, 201 P. 367; Larson v. Civil Service Comm. of City of Everett, 175 Wash. 687, 28 P. 2d 289; 62 C.J.S. 371, 372, par. 198, p. 1424, par. 702, p. 1436, Note 55, p. 1457, Note 24, p. 1471, par. 725.

Generally, the power to demote, or promote, or remove an employee is an implied part of the power to appoint

him and where the controlling charter, ordinances or statutes contain no provision to the contrary, such power is within the discretion of the appointing authority, although there are laws and authorities to the effect that the power of appointment and removal cannot always be exercised arbitrarily or capriciously. See Title 11, O.S. 1941 §334; City of Wewoka v. Rodman, supra; Horvath v. Mayor of City of Anaconda, 112 Mont. 266, 116 P. 2d 874; Morris v. Parks, 145 Ore. 481, 28 P. 2d 215; Sheriff of Salt Lake County v. Board of Com'rs, 71 Utah 593, 268 P. 783; 43 Am. Jur. pp. 31, 32, 33, pars. 183, and 184, pp. 52 and 53, par. 213; 37 Am. Jur. 865, par. 236, p. 867, par. 239, p. 869, par. 240, Note 7, p. 873, par. 244; 62 C.J.S. 1431, 1432, sec. 708, Note 90, p. 1471, sec. 725, Notes 38, 39 and 40, pp. 1508 and 1509, sec. 734, Note 40, and sec. 735. See references to some of these matters in cases cited in the annotations at 99 A.L.R. 336. Such power should be guarded carefully for many sound reasons, some of which have already been mentioned; and for an employee to be held within the protection of any specific legislative restriction of such power, he must definitely show that his position comes within the specific terms of such restriction. See Goodwin v. Oklahoma City, supra; City of Wewoka v. Rodman, supra. The practical reasons for such restrictive safeguards are consonant with sound public policy and are both numerous and obvious. If a municipal official board or commission is to be charged with the responsibility of the operation of a department, he or it should certainly have the power to select, retain or promote those among the group of eligibles who can be trusted to carry out its policies and programs, pertaining to such subjects as more efficient operation and less waste, better law enforcement, more courtesy to the public, etc., and by the same token, such authorities should have the power to relegate to lesser rank, where they will not prove obstacles to the carrying out of such policies, employees who, although generally qualified, are, by training, experience, temperament or for other reasons, less fit for the more important or key positions calling for greater or different skills, training, talent, and/or responsibility in the department. Thus it will be seen that our interpretation is not only dictated by the wording of the charter itself, but it accords with reason and practical considerations. In this connection, see City of Wewoka v. Rodman, supra, where some of such considerations were mentioned.

The fact that beginning in May, 1946, some commissions may have been issued to Tulsa policemen, naming or promoting them to a certain rank "during good behavior" does not militate against our conclusion. It is not argued that such commissions constitute contracts of employment or assured the officers upon whom they were bestowed, of being able to keep such ranks during "good behavior." (In this connection see City of Tulsa v. Melton, 175 Okla. 581, 54 P. 2d 159; 62 C.J.S. 1424, secs. 702, 707, pp. 1424. 1431.) It is merely said that they indicate administrative interpretation of the character. We think, however, that in the present case any probative value the wording of such commissions may have on the question is overshadowed and negated by the other matters we have considered, and that such wording in those issued after the repeal on May 7, 1948, of sections 3 and 11 of Ordinance 5280, may as well be attributed to official negligence, clerical habit of following previous practice, or to any one or combination of other factors, as to so-called "administrative interpretation."

In their second and third propositions, defendants assert that the trial court erred in vacating the part of the order overruling their motion for a new trial that required plaintiffs to give the injunction bond, and in refusing to admit testimony they offered at the June 20th hearing as to the amount such injunction was costing the city of Tulsa. Incidentally, it is noted that the tenor

of this testimony is inconsistent with one of the agreed factual premises upon which this appeal was submitted. Of more controlling importance, however, is the fact that this appeal proceeds from the previous order or judgment and that such errors, if any, were not called to the trial judge's attention by any motion for a new trial, thus depriving him of the opportunity of considering them. It has long been an established rule of appellate review in this jurisdiction in cases requiring, for the perfection of an appeal, the filing of and ruling upon a motion for a new trial, that this court will review only the errors specified in said motion, and no new or other assignments of error will be considered. Bunch v. Humphreys, 174 Okla. 206, 50 P. 2d 337; White v. Madison, 16 Okla. 212, 83 P. 798; Walter A. Wood Mowing & Reaping Co. v. Farnham, 1 Okla. 375, 33 P. 867.

As hereinbefore indicated the burden was upon plaintiffs to prove that they were given their "ranks", as distinguished from their "positions", on a permanent or "good behavior" basis, and that their threatened demotions came within the provisions of art. XIV, regarding "removal", and warranted the injunctive relief they sought, Champlin Refining Co. v. Corporation Commission of State of Oklahoma, 286 U.S. 210 52 S. Ct. 559, 76 L. Ed. 1062; 62 C.J.S. p. 1528, sec. 742. Such relief is like mandamus in that he who seeks it must show that he has a clear legal right to it. See, in this connection, State ex rel. Thomas v. Brenner, 171 Okla. 320, 42 P. 2d 823. In our opinion, they failed to discharge this burden. The judgment of the trial court to the contrary was erroneous, and is hereby reversed.

HALLEY, C.J., JOHNSON, V.C.J., and CORN, DAVISON, O'NEAL, and WILLIAMS, JJ., concur.