OSCN Found Document:NIEMI v. CITY OF TULSA

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 NIEMI v. CITY OF TULSA
2016 OK CIV APP 17
Case Number: No.113236
Decided: 02/19/2016
Mandate Issued: 03/23/2016
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2016 OK CIV APP 17, __ P.3d __

 

BRUCE E. NIEMI, EDDIE L. EVANS, DONALD A. LOWE, and DORIS M. ORR, Plaintiffs/Appellants,
v.
CITY OF TULSA, a Municipal Corporation, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY, OKLAHOMA

HONORABLE DAMAN CANTRELL, JUDGE

AFFIRMED

D. Gregory Bledsoe, Tulsa, Oklahoma, for Appellants,
Gerald Bender, Brandon Burris, Office of the City Attorney, Tulsa, Oklahoma, for Appellee.

Larry Joplin, Judge:

¶1 Plaintiffs/Appellants Bruce E. Niemi, Eddie L. Evans, Donald A. Lowe, and Doris M. Orr (Plaintiffs) seek review of the trial court's order denying their motion for summary judgment and granting the motion for summary judgment of Defendant/Appellee City of Tulsa, a Municipal Corporation (City) in Plaintiffs' action challenging the redistricting plan of the City's Election District Commission (Commission). Plaintiffs challenged the appointment of Commissioners as unauthorized under the City Charter, invalidating the redistricting plan of the City's Election District Commission composed of the improperly appointed Commissioners.

¶2 The Tulsa City Charter provided:

There is hereby created an Election District Commission which shall consist of three (3) members. The governing body of the two (2) political parties having the largest number of registered voters within the city as of the date of the preceding general election shall each appoint one (1) member of the Election District Commission. The Mayor shall appoint one (1) member, subject to confirmation by a majority vote of the entire membership of the Council. . . .

Tulsa City Charter, Art. VI, §10.1. On December 2, 2010, the City's Mayor wrote to the Tulsa County Democratic Party Chairman and the Tulsa County Republican Party Chairman, quoted verbatim §10.1 of the Charter, and requested an appointment to the Commission from each party. The Chairman of each party made an appointment, and the Mayor appointed a third Commissioner.

¶3 The appointed Commissioners met many times over the next months. The Commissioners approved a new election district map on June 3, 2011.

¶4 On June 29, 2011, the Oklahoma Democratic Party wrote to the Mayor:

. . . We have just learned of the existence of the City of Tulsa Election District Commission and have appointed Mr. Bruce E. Niemi, Ph.D. as the Democratic representative. . . .

. . . Please note that the State Central Committee is the supreme governing body for the Democratic Party in Oklahoma and in the City of Tulsa and for all subordinate party organizations when our State Convention is not in session. A county party and/or an individual county chair is not authorized to act for the party without our authorization.

Shortly thereafter, and within thirty days of the Commission's filing of the redistricting plan, Plaintiffs commenced the instant action to challenge the composition of the Commission as not appointed according to the City Charter by the "governing body" of each political party. Plaintiffs sought a declaratory judgment invalidating the Commission's redistricting plan.

¶5 Plaintiffs then filed a motion for partial summary judgment. Plaintiffs presented evidentiary materials argued to demonstrate: the State Convention of the Oklahoma Democratic Party is the governing body of the Oklahoma Democratic Party; the governing body of the County Democratic Party is the County Convention and/or the County Central Committee; the State Committee of the Oklahoma Republican Party is the governing body of the Oklahoma Republican Party; and the governing body of the County Republican Party is the County Committee. The Plaintiffs also presented evidentiary materials to show that the Commission representative for the Democratic Party was appointed by the Democratic Party County Chairman without consulting the State or County governing body of the Democratic Party, and the Commission representative for the Republican Party was appointed by the Republican Party County Chairman without consulting the State or County governing body of the Republican Party.

¶6 City responded and asserted a counter motion for summary judgment. City presented evidentiary materials showing: the Central Committee, composed of the County Chairman, Vice-Chairman and Secretary, was the governing body of the Tulsa County Democratic Party, and the County Chair possessed the authority to appoint members of the party to, inter alia, the County Election Board and other committees; the County Committee was the governing body of the Tulsa County Republican Party, the Tulsa County Republican Party Chairman was the chief executive of the Tulsa County Republican Party, and the Tulsa County Republican Party regarded appointments to the Commission as a proper function of the Tulsa County Republican Party Chairman. City also presented the affidavit of the City Manager attesting he was not familiar with the rules of governance for the Democratic and Republican Parties, that no one objected to the appointments to the Commission prior to filing of the Election District Plan, and neither the Oklahoma Republican Party, the Tulsa County Democratic Party nor the Tulsa County Republican Party had ever, at any time, complained concerning the appointments to the Commission.

¶7 City pointed out that the City Charter contained a provision allowing both a timely challenge to an Election District Plan, and correction of any Plan not in compliance with the Charter by the district court, but the City Charter contained no provision allowing a challenge to the composition of the Election District Commission under any circumstances. City argued the appointments to the Commission by the Tulsa County Democratic Party chairman and the Tulsa County Republican Party chairman were proper. City argued in the alternative that, if the appointments to the Commission by the Tulsa County Democratic Party chairman and the Tulsa County Republican Party chairman were not proper, the appointees occupied the office of Election District Commissioners as de facto officials whose acts were nonetheless valid and impervious to collateral attack.

¶8 Plaintiffs responded. They argued the theory of de facto officers did not apply, but even if it did, the confusion concerning the construction of the term, "governing body," as used in the City Charter should be clarified by declaratory judgment.

¶9 Supported by extensive findings of fact and conclusions of law, the trial court determined the appointed Commissioners held office as de facto officials, and the Election District Plan they developed complied with the City Charter. The trial court consequently denied the motion for partial summary judgment filed by Plaintiffs, and granted the counter motion for summary judgment of City. Plaintiffs appeal, and the matter stands submitted on the trial court record.[1]

¶10 "Summary judgment is appropriate only where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Wathor v. Mutual Assur. Adm'rs, Inc., 2004 OK 2, ¶4, 87 P.3d 559, 561. (Citation omitted.) "As this decision involves purely legal determinations, our standard of review of a trial court's grant of summary judgment is de novo[, and w]e review all inferences and conclusions to be drawn from underlying facts contained in evidentiary materials in a light most favorable to the party opposing the motion." Id. (Emphasis original.) "Summary judgment will be affirmed only if the appellate court determines that there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Lowery v. Echostar Satellite Corp., 2007 OK 38, ¶11, 160 P.3d 959, 963. "Summary judgment will be reversed if the appellate court determines that reasonable men might reach different conclusions from the undisputed material facts." Id.

¶11 "The same rules apply to the interpretation of municipal charters that apply to statutory enactments generally, and their purpose is to arrive at the intention of such charters' framers." Jones v. Bayless, 1953 OK 92, ¶0(1), 255 P.2d 506, 507. An issue of statutory construction presents "a question of law that we review de novo and over which we exercise plenary, independent and non-deferential authority," "to ascertain and follow the intent of the" drafters, giving the words "their plain and ordinary meaning unless it is contrary to the purpose and intent of the [enactment] when considered as a whole." Stump v. Cheek, 2007 OK 97, ¶9, 179 P.3d 606, 609 (emphasis original) (footnotes omitted); Jones, 1953 OK 92, ¶0(2), 255 P.2d at 507.[2]

¶12 The City Charter specifically provides:

SECTION 10.1 ELECTION DISTRICT COMMISSION.

There is hereby created an Election District Commission which shall consist of three (3) members. The governing body of the two (2) political parties having the largest number of registered voters within the city as of the date of the preceding general election shall each appoint one (1) member of the Election District Commission. The Mayor shall appoint one (1) member, subject to confirmation by a majority vote of the entire membership of the Council. The appointments shall be made and the Election District Commission shall be organized no later than the 31st day of January, 1991, and no later than the 31st day of January of each tenth year thereafter. In the event the members of the Election District Commission are not appointed within the times herein provided, such appointments shall be made by the Presiding Judge of the District Court of Tulsa County. Persons holding an elected office shall be ineligible for appointment to the Election District Commission. . . . (emphasis added).

SECTION 10.2 ADJUSTMENT OF ELECTION DISTRICT BOUNDARIES.

The Election District Commission shall adjust the boundaries of Election Districts each ten (10) years after the completion of the Federal Decennial Census. . . . The Election District Commission shall hold at least one (1) public hearing on the proposed Election District Plan. Notice of the hearing shall be published in a newspaper of general circulation in the city at least ten (10) days prior to the date of the hearing.

SECTION 10.3 ADOPTION OF ELECTION DISTRICT PLAN.

Within six (6) months after the appointment of its members, the Election District Commission shall adopt and file with the City Clerk an Election District Plan which shall supersede Schedule I attached to this amended Charter and subsequently adopted Election District Plans. All members of the Council shall thereafter be elected in accord with the Election District Plan.

SECTION 10.4 DUTIES MINISTERIAL.

The duties of the Election District Commission shall be ministerial and the performance thereof may be compelled by appropriate action. The terms of the office of the members of the Election District Commission shall expire when each Election District Plan becomes final.

SECTION 10.5 JUDICIAL REVIEW.

Any qualified elector of the city may seek a review of an adopted Election District Plan by filing a petition for review in the District Court of Tulsa County within thirty (30) days after the filing of the Election District Plan with the City Clerk. If a petition for review is not filed within such time, the Election District Plan shall become final. The District Court shall determine whether the Election District Plan complies with the provisions of this amended Charter. In the event the District Court shall determine that the Election District Plan does not comply, the District Court shall modify the Election District Plan to comply with the provisions of this amended Charter. Appeals from the final decision of the District Court may be taken as provided by law.

Notably, §10.1 permits the Presiding Judge of the District Court of Tulsa County to appoint Commissioners if no appointments are timely made as provided in that section, while §10.5 permits a timely district court challenge to a filed Election District Plan and allows a district court to modify an Election District Plan to conform with the City Charter, but the City Charter contains no provision permitting a challenge to the manner of a Commissioner's appointment. It might be said, then, that, so long as a filed Election District Plan conforms with §10.2, any challenge thereto must be denied.

¶13 That said, however, there remains a question concerning the authority to appoint Commissioners under §10.1. That section directs "[t]he governing body of the two (2) political parties having the largest number of registered voters within the city as of the date of the preceding general election [to] appoint one (1) member of the Election District Commission." The term, "governing body," must be construed together with modifying the remainder of the clause referring to "the two political parties having the largest number of registered voters within the city." More than ninety-eight percent of the residents of City live in Tulsa County. Because, in our estimation, the formation of an Election District Plan for the City presents a matter of overriding local interest for the resident voters of the City, we believe the phrase referring to the "governing body" of the two largest political parties "within the city" necessarily refers to the local governing body of the political parties in the City of Tulsa.

¶14 On this issue, the parties offered no historical evidence concerning the manner of appointing Commissioners. However, the letter from the State Democratic Party conceded, in June 2011, "[w]e have just learned of the existence of the City of Tulsa Election District Commission." Such a statement supports the conclusion that, in the previous twenty years, the State Democratic Party had not been consulted or ever complained concerning the manner of making appointments to a City Election District Commission. The provisions of the City Charter have been on the books since 1989, yet the State Party had no knowledge of the existence of the Election District Commission, and never previously sought to appoint a member, supporting a conclusion that the appointment of Commissioners had been previously treated as a matter of purely local concern.

¶15 We therefore construe §10.1 as authorizing the local County party organizations to appoint Commissioners to the Election District Commission. The evidentiary materials undisputedly establish the Tulsa County Democratic Party and the Tulsa County Republican Party as the governing bodies of their respective political parties in the City of Tulsa.

¶16 Even so, there also remains some question whether, prior to making their appointments, the Chairmen of the respective County political parties consulted with or obtained the approval of their governing boards for their appointments. The evidentiary materials support a conclusion that the Tulsa County Republican Party regarded appointment of a Commissioner to the Election District Commission as a proper function of the Tulsa County Republican Party Chairman. The evidentiary materials suggest the Chairman of the Tulsa County Democratic Party consulted with others prior to the appointment of a Democratic member to the Commission.

¶17 Even if the Chairmen of the County political parties should have, but did not, consult with their respective governing boards prior to appointing their respective Commissioners, it is clear the City had no knowledge of the rules of the political parties governing their decisions, and accepted that the appointments were made according to the rules of the individual parties. It is further clear the local County Chairmen of each party believed they were acting in accord with the Mayor's request for appointments. Thus, and even if the Commissioners were not, in fact, appointed by the governing boards of the respective County political parties, the appointees clearly acted in the good faith belief they were properly appointed, and there is no allegation they did not perform their duties otherwise than diligently. As such, and in the absence of Commissioners otherwise holding their office as a matter of law, the appointees held their offices as Commissioners in fact, and their actions, performed in good faith and pursuant to the appointments by the Chairmen of their respective political parties, are not now subject to challenge. See, State ex rel. Bd. of Regents for Oklahoma Agr. and Mechanical Colleges v. McCloskey Bros., Inc., 2009 OK 90, ¶¶22-23, 227 P.3d 133, 146-147.[3]

¶18 We therefore hold the trial court did not err as a matter of law or fact in denying the motion for partial summary judgment of Plaintiffs, and granting the motion for summary judgment of City. The order of the trial court is AFFIRMED.

BELL, P.J., and HETHERINGTON, J., concur.

FOOTNOTES

[1]See, Rule 13(h), Rules for District Courts, 12 O.S. 2011, Ch. 2, App.; Okla.Sup.Ct.R. 1.36, 12 O.S. 2011, Ch. 15, App. 1.

[2]"Where the wording of sections of a city charter is plain and unambiguous, and its meaning reasonable and practical in application, it must be accorded such meaning, and the courts, in determining its application, are not justified in reading additional words into it or in looking beyond it for a new or different meaning."

[3]"The rule that private individuals may not do indirectly or collaterally what they cannot do directly has been illustrated in the doctrine of de facto corporations and de facto officers. Under the de facto doctrine, a corporation's or municipal corporation's actions will be upheld as valid when: 1) a valid law exists authorizing the corporation; 2) a bona fide attempt to organize under such law is made; and 3) an actual good faith exercise of corporate powers. A de facto officer is similarly treated like a de facto corporation. . . . [A] de facto officer is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interest of the public and third persons. Where the functions of the office are exercised by one who was in the actual possession of it under color of title, even if the officer may not be properly qualified in accordance with the law, his or her acts will be upheld as valid and cannot be collaterally attacked."






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1953 OK 92, 255 P.2d 506, 208 Okla 270, JONES v. BAYLESS
Discussed at Length
 2004 OK 2, 87 P.3d 559, WATHOR v. MUTUAL ASSURANCE ADMINISTRATORS, INC.
Discussed
 2007 OK 38, 160 P.3d 959, LOWERY v. ECHOSTAR SATELLITE CORP.
Discussed
 2007 OK 97, 179 P.3d 606, STUMP v. CHEEK
Discussed
 2009 OK 90, 227 P.3d 133, STATE ex rel. BOARD OF REGENTS v. McCLOSKEY BROTHERS, INC.
Discussed